**KINGLAND SYSTEMS CORPORATION,** Plaintiff,

v.

**COLONIAL DIRECT FINANCIAL GROUP, INC., Defendant.**

**No. C 01–3073–MWB.**

United States District Court, N.D. Iowa, Central Division.

March 5, 2002.

Kirke C. Quinn and James R. Quilty of Dorsey & Whitney, L.L.P., Des Moines, IA, for Plaintiff.

Jan Douglas Atlas, Samantha N. Tesser of Atlas Pearlman, P.A., Fort Lauderdale, FL, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS, TRANSFER, AND/OR STAY**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *BACKGROUND* ........................................................3
   A.   *The Parties And The Lawsuits* ....................................3
      1.   *The parties and their agreements* ........................3
      2.   *The Florida Lawsuit* ..................................5
      3.   *The Iowa Lawsuit* ...................................6
   B.   *Colonial's Motion to Dismiss, Stay, or Transfer* .....................7

II. *LEGAL ANALYSIS* ...................................................7
   A.   *Abstention Generally* ........................................7
   B.   *Colorado River Abstention* ....................................8
      1.   *The "parallel litigation" prerequisite* .....................13
         a.   *Arguments of the parties* ..........................13
         b.   *Applicable considerations* ..........................15
         c.   *Analysis* ......................................18
      2.   *The Colorado River/Moses H. Cone factors* .....................22
         a.   *Arguments of the parties* ..........................23
         b.   *Consideration of the factors* ........................25
            i.   *Is there a res over which one court has established jurisdiction?* ..................................25
            ii.   *Is there any inconvenience of the federal forum?* .................26
            iii.   *Will maintaining separate actions result in piecemeal litigation?* ....................................27
            iv.   *Which case has priority?* ........................29
            v.   *Does state or federal law control?* ..................31
            vi.   *Is the state forum adequate to protect the federal plaintiff's rights?* ......................................31
            vii.   *Was there any "forum shopping"?* ....................33
      3.   *Are there "exceptional circumstances" on balance of the factors?* ..........33

III. *CONCLUSION* ....................................................34

This diversity action comes before the court pursuant to the November 27, 2001, motion of defendant Colonial Direct Financial Group, Inc., to dismiss, transfer, or stay the present federal action by plaintiff Kingland Systems Corporation, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny, in favor of another action, also brought by Kingland, in Florida state court. Colonial originally requested oral arguments on its motion, asserting that, because of the complexity of the issues involved, oral arguments would be useful for the court. Kingland later made its own request for oral arguments on the motion. However, the court does not find that oral arguments are necessary to its disposition of the motion, nor has the court's busy trial schedule reasonably provided an opportunity for oral arguments where none were absolutely required. Therefore, the court will proceed to the merits of Colonial's motion without further argument or delay.

## I. BACKGROUND

### A. The Parties And The Lawsuits

### 1. The parties and their agreements

In its complaint in this court, plaintiff Kingland alleges that it is an Iowa corporation with its principal place of business in Clear Lake, Iowa. Kingland alleges that defendant Colonial is a Delaware corporation with its principal office in Boca Raton, Florida. The dispute between the parties arises from Kingland's allegation that Colonial has not paid for computer applications and other services that Kingland

supplied to Colonial through Kingland's computers in Iowa. Two agreements between the parties are in dispute: a Master Subscriber Agreement and a Promissory Note.

Kingland alleges that it entered into a written contract, called a Master Subscriber Agreement, to provide services to Colonial on or about April 12, 2000. *See* Defendant's Memorandum in Support of Motion to Dismiss, Transfer and/or Stay, Exhibit A, Master Subscriber Agreement. Under the Master Subscriber Agreement, Kingland was to be paid a monthly fee for providing the computer application services, plus additional fees, at various hourly rates, for certain other services, plus equipment or storage costs. *Id.* at Attachment 1. The Master Subscriber Agreement contains no forum selection clause, although it does provide that "[t]his Agreement shall be governed by the internal laws of the State of New York." *Id.* at ¶ 18(f).

On or about July 24, 2000, "for value received," Colonial entered into a Promissory Note for repayment of $218,554 at 9% interest. *See* Defendant's Memorandum in Support of Motion to Dismiss, Transfer and/or Stay, Exhibits B & C (attachments

to pleadings in the Florida lawsuit), Promissory Note at 1. Kingland asserts that this Promissory Note was for sums due from, but not paid by, Colonial under the Master Subscriber Agreement as of the date on which the Promissory Note was executed. The Promissory Note provides that "[t]he entire principal and interest due and owing under this note shall be paid at the earlier of (i) Ten (10) business days after the completion of CDFG's Initial Public Offering; (ii) the receipt by CDFG of an investment equal to or greater than $1,000,000; or (iii) December 1, 2000." *Id.* The "default" provisions of the Promissory Note, which are of interest here, identified a default as including non-payment on the Note, termination of the employment of certain key personnel of Colonial, bankruptcy proceedings initiated by or against Colonial, and failure to pay invoice amounts due under the Master Subscriber Agreement for periods after July 1, 2000. *Id.* at 1–2.[1] Unlike the Master Subscriber Agreement, the Promissory Note includes a provision that is both a choice-of-law and a forum selection clause, because it states, "This Note is made and shall be governed by and in accordance with the laws of the state of Florida and venue for any action

---

1. More specifically, the "default" provision of the Promissory Note provides as follows:

At the option of the Payee [Kingland], this entire Note shall become immediately due and payable without further notice of demand upon the occurrence of any of the following events of default ("Default") which remain uncured ten (10) business days after Payee has given notice of such Default to Maker [Colonial]:

(a) Failure of the Maker to make any payment of principal, interest, or late charges when due under this Note or any other note now existing or hereafter created evidencing obligations of the Maker to the Payee;

(b) Termination of Michael Golden's or Rodney Smith's employment by Colonial Direct Financial Group, for any reason;

(c) If the Maker seeks relief pursuant to the bankruptcy laws or is made a defendant in a bankruptcy or receivership proceeding.

(d) Failure of maker to pay within 30 days of receipt of any Kingland invoice amounts due under the Kingland Master Subscriber Agreement dated April 12, 2000 for periods after July 1, 2000.

Any event of default of this Note by Maker shall be considered an event of default under Kingland's Master Subscriber Agreement dated April 12, 2000, whereby Kingland may exercise its rights under the Master Subscriber Agreement, including termination of the Master Subscriber Agreement.

Promissory Note at 1–2.

hereunder shall be Palm Beach County, Florida." *Id.* at 2.

After Colonial executed the Promissory Note, Kingland continued to provide computer applications and other services to Colonial, but the relationship soured, leading Kingland to initiate lawsuits in two separate fora, one for non-payment of the Promissory Note, and one for breach of the Master Subscriber Agreement.

### 2. *The Florida Lawsuit*

On August 15, 2001, Kingland filed a complaint against Colonial in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, alleging that Colonial "failed to pay the [July 24, 2000, Promissory] Note when due," and consequently "owes [Kingland] $218,544.00 that is due with interest since December 1, 2000 on the Note." [2] Defendant's Memorandum of Law in Support of Motion to Dismiss, Transfer and/or Stay, Exhibit B, Kingland's Complaint in the Florida lawsuit, ¶¶ 4 & 5. In the Florida lawsuit, Kingland prayed for "judgment for damages against [Colonial]." *Id.* at prayer.

On November 21, 2001, Colonial filed an Answer, Affirmative Defenses and Counterclaim to Complaint in the Florida lawsuit, in which Colonial, *inter alia*, denied Kingland's claim of failure to pay on the Promissory Note. In its Counterclaim, Colonial noted that Kingland had filed a separate action in this federal court alleging breach of the Master Subscriber Agreement, but nevertheless sought declaratory judgment under Florida law providing that the Promissory Note extinguished any obligation pursuant to the Master Subscriber Agreement; that the Master Subscriber Agreement was terminated by Kingland; that Colonial is entitled to attorney fees pursuant to the Promissory Note; and

such other relief as the court might deem just and proper. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss, Transfer and/or Stay, Exhibit C, Colonial's Answer, Affirmative Defenses, and Counterclaim in Florida lawsuit, at prayer.

### 3. *The Iowa Lawsuit*

On August 30, 2001, approximately two weeks after filing the Florida lawsuit, Kingland also filed the present action in this federal court. In this Iowa lawsuit, Kingland alleges that Colonial has breached the April 12, 2000, Master Subscriber Agreement by failing to pay for services provided under the terms and conditions of the contract. *See* Complaint at ¶ 6 & 7. More specifically, Kingland alleges that Colonial breached the Master Subscriber Agreement "(a) [i]n failing to pay for the monthly payments provided under Section 3(a) of the Agreement; (b) [i]n failing to make the payments for the remaining term of the contract after the breach; [and] (c) [i]n failing to pay the interest as provided by the Agreement." *Id.* Kingland's Complaint alleges that the Master Subscriber Agreement is governed by New York law and alleges that, under New York law, a breach has occurred. *Id.* at 9 & 10. Kingland prays for judgment against Colonial in an amount that will fairly and adequately compensate Kingland for the damages incurred as the result of Colonial's breach of the Master Subscriber Agreement, plus costs and interest as provided by law. *Id.* at prayer. Colonial has not yet answered Kingland's Complaint in this action.

### B. *Colonial's Motion to Dismiss, Stay, or Transfer*

On November 9, 2001, pursuant to an administrative order in this district, the

---

**2.** The Complaint in the Florida lawsuit does not explain the $10 difference between the amount claimed and the face amount due under the Promissory Note. The court assumes that the difference is simply a typographical error.

Clerk of Court granted Colonial's unresisted motion of the same date to extend the time to answer Kingland's Complaint until November 27, 2001. However, on the deadline to answer Kingland's Complaint, Colonial instead moved to dismiss, stay, or transfer Kingland's Iowa lawsuit pursuant to the *Colorado River* abstention doctrine pending disposition of Kingland's Florida lawsuit. On December 12, 2001, Kingland resisted Colonial's motion, and on December 21, 2001, Colonial filed a reply in further support of its motion. This matter is now fully submitted.

## II. LEGAL ANALYSIS

### A. Abstention Generally

"As a general rule, federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." *Beavers v. Arkansas State Bd. of Dental Exam'rs*, 151 F.3d 838, 840 (8th Cir.1998) (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236); *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.*, 48 F.3d 294, 297 (8th Cir.1995). "This obligation does not evaporate simply because there is a pending state court action involving the same subject matter." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (citing *Colorado River*, 424 U.S. at 813–14, 817, 96 S.Ct. 1236). On the other hand, "[t]his obligation notwithstanding, federal courts may abstain from deciding an issue in order to preserve 'traditional principles of equity, comity, and federalism.'" *Beavers*, 151 F.3d at 840 (quoting *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir.1990)). Whether or not a federal court should abstain from hearing a matter under one of the federal abstention doctrines is a matter in the court's discretion. *See Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 727 (8th Cir.2001) (observing, in a *Colorado River* abstention case, that "[d]ecisions on possible abstention are reviewed for abuse of discretion");

*Beavers*, 151 F.3d at 840 (noting, in a *Pullman* abstention case, that decisions to abstain are reviewed for abuse of discretion, but "'[t]he underlying legal questions ... are subject to plenary review'") (quoting *Sheerbonnet, Ltd. v. American Express Bank, Ltd.*, 17 F.3d 46, 48 (2d Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994)). However, a federal court may *not* decline to exercise its jurisdiction "'as a matter of whim or personal disinclination.'" *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (quoting *United States Fidelity & Guar. Co. v. Murphy Oil USA*, 21 F.3d 259, 261 (8th Cir.1994), in turn quoting *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962) (*per curiam*)).

### B. Colorado River Abstention

One federal abstention doctrine, so-called "*Colorado River* abstention," after *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), grants a federal court the discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. *See Beavers*, 151 F.3d at 841 n. 7; *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297. However, "the potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (citing *Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236). As the Supreme Court itself explained in *Colorado River*,

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. As between federal district courts, however, though no precise rule has

evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (citations omitted). Thus, rather than simply considering potential "conflict" between state and federal litigation, "[t]he policies underlying *Colorado River* abstention are 'considerations of "[w]ise judicial administration," giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297–98 (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, in turn quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

■ As the Supreme Court also explained in *Colorado River,* "Given this obligation [to exercise jurisdiction given to federal courts], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention [under previously recognized doctrines]." *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236; *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 298 n. 4 ("Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially nar-

rower than are the doctrines of *Pullman, Younger* and *Burford* abstention, which are based on 'weightier' constitutional concerns," citing *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236). Indeed, as the Supreme Court explained in *Colorado River*—and the Eighth Circuit Court of Appeals has repeatedly reiterated—a federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." *See, e.g., Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236; *Dominium Austin Partners, L.L.C.,* 248 F.3d at 727 ("A federal court should decline jurisdiction [on the basis of *Colorado River* abstention] only under exceptional circumstances."); *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (also stating the "exceptional circumstances" standard). Those "exceptional circumstances" must be such that " 'repair to the State court would clearly serve an important countervailing interest.' " *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr.,* 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in turn quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236). This is true, "even if diversity of citizenship is the only jurisdictional foundation," as is the case in the present federal lawsuit between Kingland and Colonial. *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir.1995).[3]

■ "A parallel state court proceeding is a necessary prerequisite to use of the *Colorado River* factors." *In re Burns & Wilcox, Ltd.,* 54 F.3d 475, 477 (8th Cir. 1995) (citing *Baskin v. Bath Township Bd. of Zoning Appeals,* 15 F.3d 569, 571–72

---

**3.** In *Symington,* the Eighth Circuit Court of Appeals recognized that the circuits were then split on the question of whether the *Colorado River/Moses H. Cone* exceptional circumstances test applies to declaratory judgment cases. *Symington,* 50 F.3d at 557. However, the rule that exceptional circumstances are required for *Colorado River* ab-

stention, even in diversity cases, appears to have survived the Supreme Court's subsequent clarification of the standard for abstention otherwise applicable in federal declaratory judgment cases in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

(6th Cir.1994)). If the prerequisites for abstention are met, the Eighth Circuit Court of Appeals has explained,

> Determination of the existence of "exceptional circumstances" requires evaluation of several factors (the *Colorado River/Moses H. Cone* factors), as follows:
>
> > (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.
>
> [*Murphy Oil USA* ], 21 F.3d at 263.

*Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297; *accord Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, —— (8th Cir.2002) (citing *Federated Rural Elec. Ins. Corp.* for the pertinent factors); *Dominium Austin Partners, L.L.C.*, 248 F.3d at 727 (a court should decide whether exceptional circumstances warranting abstention exist by "giving consideration to the inconvenience of the forum, the order in which jurisdiction was obtained by the fora, and the desirability of avoiding piecemeal litigation," citing *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236). The first four factors, as listed by the Eighth Circuit Court of Appeals in *Federated Rural Electric Insurance Corporation*, are explicitly identified in *Colorado River* itself, *see Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236, while the fifth and sixth factors, *i.e.*, whether federal or state law provides the rule of decision and whether the state procedures are adequate to protect the federal plaintiff's rights, were subsequently explicitly added to the list by the Supreme Court in *Moses H. Cone. See Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Besides the four factors expressly discussed in *Colorado River*, there is another that emerges from *[Will v.] Calvert [Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) ]—the fact that federal law provides the rule of decision on the merits.") & 26 ("Finally, in this case an important reason against allowing a stay is the probable inadequacy of the state-court proceeding to protect Mercury's rights.").

Although a district court is armed with a list of pertinent factors, the Supreme Court cautioned that "[t]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 16, 103 S.Ct. 927. Thus, these factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 21, 103 S.Ct. 927. As the Eighth Circuit Court of Appeals explained, in light of these cautions,

> In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. at 937. And:
>
> > we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado*

*River* to justify the *surrender* of that jurisdiction.

*Moses H. Cone,* 460 U.S. at 25–26, 103 S.Ct. at 942 (emphasis in original). Bearing these instructions in mind, we turn to the *Colorado River/Moses H. Cone* factors to determine whether this case presents "the clearest of justifications [that alone] will warrant" abstention. *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247.

*Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (emphasis in the original).[4]

### C. Is Colorado River Abstention Appropriate?

The parties dispute whether the prerequisite for *Colorado River* abstention is even satisfied in this case, with Colonial arguing that the two proceedings are "parallel" and Kingland contending that they plainly are not. Even assuming that the state and federal proceedings are parallel, the parties also dispute which way nearly every factor in the *Colorado River/Moses H. Cone* abstention analysis ultimately weighs. Therefore, the court will consider both the "parallelism prerequisite" and the application of the *Colorado River/Moses H. Cone* factors, even if the court concludes that the actions are not parallel.

#### 1. The "parallel litigation" prerequisite

#### a. Arguments of the parties

In its motion to dismiss, stay, or transfer, Colonial contends that the "parallelism prerequisite" for *Colorado River* abstention has been satisfied, because this action and the Florida lawsuit are "parallel" by virtue of Kingland's breach-of-contract claim in this lawsuit and Colonial's counterclaim in the Florida lawsuit. Colonial argues that the Florida lawsuit encompasses all of the issues raised in both actions, because the Florida lawsuit now involves judicial determination of the rights of the parties under both the Master Subscriber Agreement and the Promissory Note. Colonial argues that this is so, because any rights Kingland has to vindicate in either lawsuit ultimately depend upon the Promissory Note where, as alleged in Colonial's Florida counterclaim, the Promissory Note "extinguished" the Master Subscriber Agreement. Thus, Colonial contends that the two contemporaneous lawsuits involve identical parties and substantially the same issues.

Kingland, however, argues that the Iowa and Florida lawsuits simply are not "parallel," making it unnecessary for the court to consider abstention further. Kingland argues that, while the Florida lawsuit involves breach of the Promissory Note, the Iowa lawsuit involves breaches of the Master Subscriber Agreement *subsequent to* execution of the Promissory Note. Thus, Kingland argues, the Iowa lawsuit involves a claim to recover for services not covered by the Promissory Note. In Kingland's view, the lawsuits "as they currently exist," are distinct and separate, even if they could be modified to make them identical. Because the two lawsuits are distinct and separate, Kingland asserts that it properly brought the suit on the Promissory Note in Florida as required under the forum selection clause in that Promissory Note, but brought the suit on the Master Sub-

---

4. Even if the actions are parallel and *Colorado River* abstention is otherwise appropriate, the court must stay the federal action, rather than dismiss it without prejudice, where the federal plaintiffs have alleged violations of federal laws, such as federal civil rights laws, and must, therefore, have a federal forum available, without concern for statute of limitations problems, if the state court fails for any reason to reach the merits of the federal claims. *See, e.g., Selmon v. Portsmouth Drive Condominium Ass'n,* 89 F.3d 406, 410 (7th Cir.1996). However, there are no federal-law claims at issue in this case.

scriber Agreement in the forum Kingland prefers, federal court in Iowa. Also, because the suits are premised on different contracts and facts, Kingland argues that Colonial's attempt to characterize the two lawsuits as "parallel" by virtue of Colonial's counterclaim for declaratory judgment that the Promissory Note extinguished the Master Subscriber Agreement is "disingenuous at best." Moreover, Kingland rejects Colonial's contention that the lawsuits are "parallel" by virtue of Colonial's counterclaim, because any "extinguishment" argument is totally without merit. Any perceived ambiguity about whether the Promissory Note extinguished the Master Subscriber Agreement, Kingland's argument continues, must be construed against the drafter of the Note, which was Colonial.

In its reply, Colonial expands upon its argument that the two lawsuits are "parallel." Colonial contends that "identity" of claims is not required for abstention. Rather, Colonial argues that all that is required is that the claims be "substantially similar," which Colonial contends is the case here. Specifically, Colonial argues that the claims in the Florida and Iowa lawsuits are sufficiently overlapping factually and intertwining legally to satisfy the "parallel lawsuits" prerequisite to abstention.

#### b. Applicable considerations

As noted above, the Eighth Circuit Court of Appeals has recognized that "[a] parallel state court proceeding is a necessary prerequisite to use of the *Colorado River* factors." *In re Burns & Wilcox, Ltd.*, 54 F.3d at 477. However, this court has found little guidance in precedent of the Eighth Circuit Court of Appeals on precisely what constitutes a "parallel state court proceeding" for purposes of *Colorado River* abstention. Therefore, this court must look to decisions from other Circuit Courts of Appeals for guidance.

This court's survey of pertinent out-of-circuit precedent begins with *Baskin v. Bath Township Bd. of Zoning Appeals*, 15 F.3d 569 (6th Cir.1994), the decision on which the Eighth Circuit Court of Appeals relied in *Burns & Wilcox* for its recognition that "parallel litigation" is a prerequisite to *Colorado River* abstention. In *Baskin*, at the center of the dispute was a zoning variance granted to Baskin for five amateur radio towers and antennae on his residential property. *Baskin*, 15 F.3d at 570. In a state-court action, homeowners asserted that the variance went too far, and Baskin intervened in that action to defend the variance against that challenge, but he also filed a federal action in which he asserted that the variance did not go far enough, and consequently violated his federal constitutional rights to equal protection and substantive due process. *Id.* at 571. The federal district court *sua sponte* dismissed Baskin's federal action on *Colorado River* grounds, but on appeal, Baskin argued that the federal and state actions were not "parallel." *Id.* at 570–71. The Sixth Circuit Court of Appeals agreed with Baskin, and in the absence of any "parallel" state action, held that abstention was improper. *Id.* at 572.

In *Baskin*, the appellate court reasoned that, " 'While it may be true ... that [the state court proceeding] *could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court proceeding], as it *currently* exists, *is* a parallel, state-court proceeding.' " *Id.* at 572 (quoting *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir.1984), with emphasis in *Crawley* ). The court likened this "parallelism" requirement to the "availability of complete relief," noting that, where additional issues are raised in the federal forum, and the state forum fails or is unable to address the federal constitutional questions, the district court

should not abstain. *Id.* The court reasoned further that the two cases in question did not have the "required identity of parties and issues," even though the two actions arose out of "the same basic facts," because the two disputes involved different aspects of the zoning variance and different kinds of relief. *Id.* The court rejected the argument that Baskin had not raised his federal claims in state court, so that any contention that he could not do so would have been merely speculative, because "in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised." *Id.* The court also rejected the argument that there was then pending a parallel state action brought by Baskin to assert his federal claims after dismissal of his state action, because events subsequent to the federal court's determination of abstention were not before the lower court and could not be reviewed by the appellate court. *Id.*

Thus, in *Baskin*, the court first clarified that the analysis of the "parallelism" prerequisite looks at the two proceedings as they currently exist, not as they could be modified to mirror each other. Moreover, even where the claims arose out of "the same basic facts," the court considered "parallelism" in terms of whether one of the actions, as it then existed, could afford "complete relief," observing that, where the state court could not afford some of the relief available in the federal forum, the federal court should not abstain.

Decisions from other circuits considering "parallelism" are also helpful, and are generally consistent with the analysis of the "parallelism" question in *Baskin*. All courts appear to agree that "parallelism" is a prerequisite to *Colorado River* abstention. *See, e.g., Dittmer v. County of Suf-*

*folk,* 146 F.3d 113, 118 (2d Cir.1998) ("The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.' ") (quoting *Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 734 (9th Cir.1991)). However, while the court in *Baskin* referred to "identity" of parties and issues, most other courts define "parallelism" for purposes of *Colorado River* abstention in terms of "*substantially* the same parties" litigating "*substantially* the same issues." *See, e.g., Al–Abood v. El–Shamari,* 217 F.3d 225, 232 (4th Cir.2000); *Allen v. Board of Educ., Unified Sch. Dist. 436,* 68 F.3d 401, 402 (10th Cir.1995); *New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992); *Day v. Union Mines, Inc.,* 862 F.2d 652, 655 (7th Cir.1988); *but see National Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d Cir.1997) ("Federal and state proceedings are 'concurrent' and 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same."). On the other hand, all courts appear to agree that mere "commonality of subject matter does not amount to the 'contemporary exercise of concurrent jurisdictions.' " *See Dittmer,* 146 F.3d at 118 (quoting *Kirkbride,* 933 F.2d at 734).

In *Al–Abood,* the Fourth Circuit Court of Appeals held that the two actions were *not* parallel, even though the party seeking abstention argued that " 'each party's claims in one case were defenses in the other.' " *Al–Abood,* 217 F.3d at 232 (quoting the party's brief). Even though the parties in the two suits were "substantially the same," and even though "the two proceedings ha[d] certain facts and arguments in common," the appellate court held that the district court had "no duty to examine

the various abstention factors," because "the legal issues [were] not substantially the same." *Al–Abood,* 217 F.3d at 232–33 (citing *McLaughlin v. United Va. Bank,* 955 F.2d 930, 935 (4th Cir.1992), as stating that, although the two actions involved similar claims and there were facts in common, the actions were not parallel, because neither the parties nor the legal theories were the same, and *New Beckley Mining,* 946 F.2d at 1074, as noting that "some factual overlap does not dictate that proceedings are parallel"). Instead, in the state proceeding, "the central issues concern[ed] whether a trust was created and whether trust funds were confiscated by Al–Abood," but in the federal proceeding, "the central issues ... concern[ed] whether the El–Shamaris were fiduciaries with regard to Al–Abood and whether the El–Shamaris committed fraudulent acts to bilk money from Al–Abood." *Id.* at 232–33. In *Dittmer,* the Second Circuit Court of Appeals found no "parallelism" where none of the plaintiffs in the federal action were involved in the state case, and that state case presented "distinctly different facts and predominately state law claims," while the federal action involved federal constitutional claims, which the federal court would have to determine regardless of the outcome of the state case. *Dittmer,* 146 F.3d at 118. On the other hand, the Second Circuit Court of Appeals held that state and federal proceedings *were* "parallel" where "(1) the primary claim for declaratory relief raised by [one federal plaintiff] in the [federal] action will be raised and decided in the state action, and (2) [the federal plaintiffs] are parties in both suits." *Karp,* 108 F.3d at 22 (discretionary abstention in a declaratory judgment case).

### c. Analysis

■ The court concludes that this lawsuit in federal court and the Florida lawsuit in state court are not "parallel" as required for consideration of *Colorado River* abstention. This is so, even though the parties in the two actions are not just "substantially similar," but identical, and even though, read broadly, the claims in the two actions arise from the same basic facts of the parties' business relationship.

As in *Baskin,* " '[w]hile it may be true ... that [the state court proceeding] *could* be modified so as to make it identical to the current federal claim, that is not the issue here' "; rather, " '[t]he issue is whether [the state court proceeding], as it *currently* exists, *is* a parallel, state-court proceeding.' " *Baskin,* 15 F.3d at 572 (quoting *Crawley,* 744 F.2d at 31, with emphasis in *Crawley* ). Colonial is correct that only the Florida lawsuit could provide complete relief between the parties, because the lawsuit on the Promissory Note *must* be brought in that forum, while the action on the Master Subscriber Agreement *could* be brought there. *See id.* (likening "parallelism" to the "availability of complete relief"). However, the Florida lawsuit as it *currently* exists, *see id.,* will not necessarily do so: The Florida lawsuit as it currently exists will only dispose of Kingland's present claim under the Master Subscriber Agreement if Colonial succeeds on the merits of its counterclaim for declaratory judgment that the Promissory Note extinguished the Master Subscriber Agreement. However, if Colonial's counterclaim fails—as this court deems it very likely that it *will,* where the court's first reading of the plain language of the Promissory Note is that it expressly contemplates the continuation of, and continued performance under, the Master Subscriber Agreement—nothing about Kingland's claim or Colonial's counterclaim in the Florida lawsuit even addresses whether Colonial breached the Master Subscriber Agreement after the Promissory Note was executed. *Cf. Dittmer,* 146 F.3d at 118 (the federal court would still have to re-

solve federal constitutional claims, regardless of the outcome of the state court action involving state-law claims, leading the court to conclude that the two actions were not "parallel"). Although breach of the Master Subscriber Agreement after July 1, 2000, is specifically identified in the Promissory Note as a default under the Promissory Note, *see* Promissory Note at 1–2 & *supra* n. 1, Kingland did not allege such a default as the basis for its suit to recover on the Promissory Note in the Florida lawsuit; rather, Kingland alleged only that Colonial "failed to pay the [July 24, 2000, Promissory] Note when due," and consequently "owes [Kingland] $218,544.00 that is due with interest since December 1, 2000 on the Note." Defendant's Memorandum of Law in Support of Motion to Dismiss, Transfer and/or Stay, Exhibit B, Kingland's Complaint in the Florida lawsuit, ¶¶ 4 & 5. Thus, as in *Baskin*, the "required identity of . . . issues" is not present—nor are the issues "substantially similar," *see, e.g., Al–Abood,* 217 F.3d at 232—even though the two actions may have arisen out of "the same basic facts," because the two disputes involve different aspects of that dispute. *See Baskin,* 15 F.3d at 572. The Florida lawsuit involves the question of whether Colonial breached a Promissory Note, which was entered into to cure an earlier breach of the Master Subscriber Agreement—non-payment—while the Iowa lawsuit in this federal court involves the question of whether Colonial breached the Master Subscriber Agreement *after* entering into the Promissory Note by again failing to pay for further services under the Master Subscriber Agreement. *See id.* (even though the two actions arose out of "the same basic facts"

of the federal plaintiff's zoning variance, the two disputes involved different aspects of the zoning variance, one action contesting whether the variance went too far, and the other action contesting whether the variance went far enough); *accord Al–Abood,* 217 F.3d at 232–33 (even though the parties were "substantially the same," and the two proceedings had facts and arguments in common, "the legal issues [were] not substantially the same," where one action involved whether a trust was created and trust funds confiscated by one party, and the other involving whether the other parties were fiduciaries who committed fraudulent acts); *Dittmer,* 146 F.3d at 118 (the two claims involved distinctly different facts and applicable law, and thus were not parallel).[5]

Similarly, as in *Al–Abood,* notwithstanding the argument of the party seeking abstention that " 'each party's claims in one case were defenses in the other,' " *Al–Abood,* 217 F.3d at 232 (quoting the party's brief), that just isn't so here. *Id.* (rejecting the argument that the claims and defenses were simply reversed in the two actions, because "the legal issues [were] not substantially the same"). Colonial nowhere asserts in the Florida lawsuit, as a defense or counterclaim, that it is entitled to declaratory judgment that it *did not breach* the Master Subscriber Agreement after executing the Promissory Note (or for that matter, that it did not breach the Master Subscriber Agreement at some time *before* executing the Promissory Note). Thus, "compar[ing] the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised," *see Baskin,*

---

**5.** The court notes that Kingland's Complaint in this action does not specify the timing of the breach of the Master Subscriber Agreement by failure to pay at issue in this action. *See* Complaint at ¶ 6. However, Kingland will be bound in this lawsuit by its representation

in response to Colonial's motion to dismiss, transfer, or stay that the present lawsuit *only* involves a claim to recover for breaches of the Master Subscriber Agreement *after* July 1, 2000.

15 F.3d at 572, the court concludes that the two actions simply are not "parallel." *Accord id.; Al–Abood,* 217 F.3d at 232.

In light of the differences in the claims in the two actions, the court does not find anything dispositive of the "parallelism" question in the fact that the present action does not involve any federal law or federal constitutional claims. *Compare Dittmer,* 146 F.3d at 118 (actions were not parallel where the state court action was based on state law, but the federal action included federal constitutional claims that the federal court would have to resolve regardless of the outcome in state court). What law applies to the claims in each lawsuit is one of the factors in the *Colorado River, see, e.g., Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297, but differences in applicability of state or federal law to the claims in the two actions is not a necessary distinction on the "parallelism" question. *See Al–Abood,* 217 F.3d at 232–33 (the source of the law governing the claims in the two actions was not mentioned in the determination that the actions were not parallel); *Baskin,* 15 F.3d at 572 (same).

Moreover, the relief sought by Kingland—and indeed, by Colonial on its counterclaim—is different in the two suits. *See Baskin,* 15 F.3d at 572 (considering whether the two lawsuits sought different relief). In the Florida lawsuit, Kingland seeks recovery of the face amount of the Promissory Note, plus interest, and Colonial, by way of a counterclaim, seeks a declaratory judgment not presently at issue here that the Master Subscriber Agreement was extinguished by the Promissory Note, while in this action, Kingland seeks damages for Colonial's breach of the Master Subscriber Agreement after July 1, 2000. *Compare Baskin,* 15 F.3d at 572 (the two lawsuits were not "parallel," where they involved different kinds of relief).

Because the Iowa and Florida lawsuits are not "parallel," the prerequisite for *Col-* *orado River* abstention is not present in this case. *See Burns & Wilcox,* 54 F.3d at 477.

### 2. The Colorado River/Moses H. Cone factors

■■■ In light of the court's conclusion on "parallelism," the court need not apply the *Colorado River* factors. However, the court will do so, in the alternative, because the parties have also pursued that course. Therefore, the court will nevertheless "turn to the *Colorado River/Moses H. Cone* factors to determine whether this case presents 'the clearest of justifications [that alone] will warrant' abstention." *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (quoting *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236).

#### a. Arguments of the parties

As to the factors in the *Colorado River* abstention analysis, Colonial argues that factors weighing significantly one way or the other here all weigh in favor of abstention in this lawsuit and litigation of the parties' disputes in the Florida lawsuit. Colonial argues that the Iowa forum is inconvenient, but the Florida forum is not, because several of Colonial's key witnesses live in Florida, including persons involved in negotiating the two agreements between the parties, and, furthermore, some of those key witnesses may not be compelled by Colonial to appear in the Iowa lawsuit, as they are no longer employed by Colonial. Colonial also argues that the federal forum in Iowa is substantially inconvenient to Colonial itself, because none of the persons who now own or operate Colonial has any contacts with Iowa and none has ever conducted business with Kingland in Iowa. Colonial also argues that the Promissory Note is governed by Florida law, while the Master Subscriber Agreement is governed by New York law, which is foreign to the

forum of either lawsuit, suggesting that neither party contemplated litigation in Iowa. The fact that Iowa law has nothing to do with the parties' disputes, Colonial argues, goes to both the inconvenience of this forum and the separate factor of the impact of controlling law. Colonial also argues that the forum selection clause in the Promissory Note should tip the balance in favor of the Florida lawsuit, particularly in light of Colonial's contention that the Promissory Note extinguished any obligation pursuant to the Master Subscriber Agreement. Colonial also argues that the specter of piecemeal litigation can be avoided by allowing all of the claims between the parties to be addressed in one forum, Florida, and a determination in the Florida action that the Promissory Note extinguished the Master Subscriber Agreement could resolve all of the parties' claims. Colonial points out that such complete disposition of the parties' dispute is not possible in this forum, because this court cannot resolve the claim involving the Promissory Note in light of the forum selection clause in that Note. Colonial also argues that the Florida lawsuit has priority of filing and is more advanced, in that an answer has already been filed in that lawsuit. Finally, Colonial argues that the Florida forum is adequate to protect Kingland's rights, because there are no "federal" issues or claims in this diversity action, and because, in light of Colonial's contention that the Promissory Note extinguished the Master Subscriber Agreement, the only rights at issue are the parties' rights under the Promissory Note, which is governed by Florida law.

Kingland counters Colonial's arguments that the pertinent factors in the *Colorado River* abstention analysis favor abstention in this case with a very different view of how the factors balance out. First, Kingland asserts that Colonial has improperly downplayed the extraordinary and narrow circumstances in which *Colorado River* ab-

stention should be invoked at all. Kingland also argues that the Florida forum is not adequate to protect its rights in the federal action, because of the relative advantages of discovery in the federal system, including the now-mandatory initial disclosures required by Rule 26 of the Federal Rules of Civil Procedure. Kingland also argues that this federal court regularly interprets the laws of other states, so that it is better suited to interpret and apply New York law, which governs the Master Subscriber Agreement, even if Florida courts interpret the law of other states upon occasion. Kingland next contends that the issues in the state and federal lawsuits are easily severed, as they involve entirely separate services and failures to pay under separate agreements, reiterating that Colonial's argument that the Master Subscriber Agreement was extinguished by the Promissory Note is totally without merit. Kingland argues that, in the circumstances presented, with two lawsuits filed by the same party just two weeks apart, and both in the "infant stages" of litigation, "priority" is irrelevant. Any difference in the dates of filing of the two lawsuits Kingland attributes merely to "happenstance," and the fact that the two lawsuits were not brought simultaneously in one forum arises from the fact that a suit on the Promissory Note had to be brought in Florida, but a suit on the Master Subscriber Agreement could be brought in a preferred forum. Finally, in response to Colonial's arguments about the inconvenience of this forum to Colonial and its Florida witnesses, Kingland argues that most of its witnesses live in or near Iowa, some of those witnesses are no longer employed by Kingland and thus cannot be compelled to appear in Florida and are not subject to subpoena for deposition by a Florida state court, and much of the documentary evidence is in this forum.

In its reply, Colonial reasserts that the Florida state forum is adequate to protect Kingland's rights, because essentially everything that could be discovered under the Federal Rules of Civil Procedure can be discovered pursuant to state rules of civil procedure. Colonial contends that discovery advantages could not have been too critical to Kingland, because Kingland brought its action on the Promissory Note in Florida state court instead of federal court. Finally, Colonial contends that priority of the Florida lawsuit is not "irrelevant," and instead weighs in favor of abstention in this forum, because more progress in discovery, some of it initiated by Kingland, has already occurred in the Florida lawsuit.

#### b. Consideration of the factors

**i. Is there a res over which one court has established jurisdiction?** The first of the *Colorado River/Moses H. Cone* factors is " 'whether there is a res over which one court has established jurisdiction.' " *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (quoting *Murphy Oil USA*, 21 F.3d at 263). However, the parties agree, and the court finds, that there is no res over which one court has established jurisdiction. Therefore, this factor is not relevant in the circumstances presented in this case. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 16, 103 S.Ct. 927 (the court must perform "a careful balancing of the important factors as they apply in a given case") & 21 (the factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand").

**ii. Is there any inconvenience of the federal forum?** In *Federated Rural Electric Insurance Corporation*, the Eighth Circuit Court of Appeals provided no guidance on the application of the "inconvenience of the federal forum" factor, the second one in the analysis, because the parties agreed that there was no appreciable difference in the level of inconvenience

between the two fora. *See Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297. That is not the case here, where Colonial asserts that the Iowa forum is prohibitively inconvenient, because of the location of its employees, former employees, or pertinent records, and Kingland asserts that it is the Florida forum that is inconvenient for the same reasons. However, in the past, when confronted with similar arguments on motions to dismiss or transfer based on inconvenience of the forum, this court has repeatedly recognized that it need not dismiss or transfer an action where to do so would only shift the inconvenience of the forum from one party to the other, and Colonial, which bears the burden on the present motion, has done no more than demonstrate that the relative inconvenience of the forum would be shifted from one side and one set of witnesses to the other side and another group of witnesses. *See Rick v. Stevens*, 145 F.Supp.2d 1026, 1039 (N.D.Iowa 2001) (addressing a motion to dismiss pursuant to the common-law *forum non conveniens* doctrine and to transfer pursuant to 28 U.S.C. § 1404(a)); *Med–Tec Iowa, Inc. v. Nomos Corp.*, 76 F.Supp.2d 962, 971 (N.D.Iowa 1999) (motion to transfer under the "first-filed rule" and 28 U.S.C. § 1404(a)); *MidAmerican Energy Co. v. Coastal Gas Marketing Co.*, 33 F.Supp.2d 787, 791 (N.D.Iowa 1998) (same); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F.Supp. 1334, 1358 (N.D.Iowa 1996) (same), *aff'd*, 119 F.3d 688 (8th Cir.), *cert. denied*, 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

Moreover, as this court explained in *Rick*,

> [T]he court concludes that Iowa may be less convenient, but it is not sufficiently inconvenient to warrant dismissal. This forum would not bar access to sources of proof, not least because there will be costs of obtaining the attendance of unwilling and willing witnesses in either

[Florida] or Iowa, because not all witnesses either side wants will necessarily be subject to compulsory process in either forum. Moreover, the availability of videotaped depositions, for example, coupled with the availability of adequate facilities in this court for presentation of such depositions, limits the inconvenience likely to be imposed on witnesses if this action remains in this forum. Even more compelling to the conclusion that inconvenience of this forum for witnesses (and parties) is not a factor here is that this court has available sophisticated "real time" videoconferencing technology, which will allow witnesses at a distant location to be examined and cross-examined "live" before a jury or the court, thus maintaining the effectiveness of their testimony at considerable savings to the parties in inconveniences and costs of bringing such witnesses, willing or unwilling, to this courthouse. *Rick,* 145 F.Supp.2d at 1038 (internal citations omitted) (modified to the circumstances of this case). This forum is simply not so inconvenient that it is, or weighs in favor of a finding that there is, an "exceptional circumstance" warranting *Colorado River* abstention.

***iii. Will maintaining separate actions result in piecemeal litigation?*** As to the "avoidance of piecemeal litigation" factor, "[t]he Supreme Court cases make it clear that this is the predominant factor." *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (citing, for example, *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927). In this court's view, the weight of this factor is in keeping with the policies underlying *Colorado River* abstention, which, as explained above, "are 'considerations of "[w]ise judicial administration," giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 297–98 (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, in turn quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).[6]

The court acknowledges that, in the circumstances presented here, there is some possibility of "piecemeal litigation," in terms of resolution of all of the disputes between the parties. On the other hand, as explained above, the two claims on which Kingland initiated the two lawsuits are entirely severable, factually and legally. That is, they are entirely severable, unless Colonial could somehow succeed on its counterclaim in the Florida action by obtaining a declaratory judgment that the Promissory Note extinguished the Master Subscriber Agreement, but this court has already suggested that the premise of this part of Colonial's Florida counterclaim is specious. Moreover, although the court also recognizes that a ruling favorable to Colonial on its Florida counterclaim could be *res judicata* in Kingland's Iowa lawsuit on the Master Subscriber Agreement, the court views that possibility as remote indeed, and even if it were less remote, "the potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297

---

**6.** On the other hand, the Eighth Circuit Court of Appeals recently explained that certain "strong policy considerations" may outweigh concerns about "piecemeal litigation," thus weighing against abstention. *See Dominium Austin Partners, L.L.C.,* 248 F.3d at 727 ("[T]he strong federal policy in favor of arbitration requires giving full effect to arbitration clauses, even where that might lead to piecemeal litigation."). This court will not attempt to hypothesize about what other "strong policy considerations" might outweigh concerns about "piecemeal litigation," because in this case, the court concludes that there is little real concern about "piecemeal litigation" in the first place.

(citing *Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236). Nor are "[t]he policies underlying *Colorado River* abstention," *see id.*, necessarily and heavily implicated here, where the claims of the plaintiff in the two lawsuits are entirely severable and only the defendant's injection of a counterclaim into one lawsuit, when it properly belongs in the other lawsuit, if that counterclaim has any merit at all, creates any factual or legal overlap between the two suits. This is not the sort of case in which a stay in federal court might avoid serial consideration of the same issue in separate actions brought by several litigants. *See id.* at 298. If the "piecemeal litigation" factor weighs at all in favor of abstention in this case, it is only slightly, and certainly not sufficiently to establish "exceptional circumstances."

***iv. Which case has priority?*** As the Eighth Circuit Court of Appeals has explained, the "priority" factor "stems from the familiar first-to-file rule." *Symington*, 50 F.3d at 559. In *Colorado River*, the Supreme Court identified the "priority" factor as "the order in which jurisdiction was obtained by the concurrent forums," *i.e.*, primarily in terms of order of filing. *See Colorado River*, 424 U.S. at 818, 96 S.Ct. 1236. However, in *Moses H. Cone*, the Supreme Court clarified that the "priority" factor should focus primarily on whether proceedings have advanced more in one forum than another, *i.e.*, primarily in terms of relative progress. *Moses H. Cone Mem. Hosp.*, 460 U.S. at 21, 103 S.Ct. 927 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."); *Symington*, 50 F.3d at 559 (noting that, "in the context of parallel state-federal litigation [the 'priority' factor] developed to require assessment not just of which case was filed first, but which has made more progress," citing *Moses H. Cone*, 460 U.S. at 21–22, 103 S.Ct. 927);

*accord Dominium Austin Partners, L.L.C.*, 248 F.3d at 727 (as to the factor considering the order in which jurisdiction was obtained, "the real question is which case has progressed further," not which one was filed first). As to "priority," it is also perhaps appropriate to consider the extent to which the progress in the state action has been due to reactive tactics of the party requesting that the federal court abstain. *See Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299 & n. 7 (discussing the impact of "reactive tactics" in the context of "forum shopping" as "an additional aspect of [the *Colorado River* abstention] analysis not specifically included as a factor," noting "that much of the progress that has been made in the state actions has been due to the reactive tactics of [the federal defendant]," who "[i]t appears ... used this extension [of time in which to answer the federal plaintiff's declaratory judgment complaint] to amend and serve [one state court] complaint and to file motions for partial summary judgment in both [of the state court] actions").

In the present case, notwithstanding Colonial's assertions that the Florida lawsuit was filed first, an answer and counterclaim have already been filed in that lawsuit, and some discovery propounded, including discovery by Kingland, the "priority" factor also does not weigh in favor of abstention in this federal lawsuit. Colonial's answer in the Florida lawsuit was only filed on or about November 21, 2001, and its answer in this action was originally due well before that date. Colonial's answer in this case became due on November 27, 2001, only because Colonial had been granted an extension of time, and upon the deadline for an answer in this case, Colonial instead filed its motion to dismiss, stay, or transfer. Thus, one reading of the sequence of events in this case is that Colonial used its extension of time to answer in this lawsuit to attempt to create a basis for arguing

that the Florida lawsuit is somehow more advanced by answering Kingland's Florida complaint and starting the discovery process. Thus, as in *Federated Rural Electric Insurance Corporation*, only Colonial's "reactive tactics" create any priority in the Florida lawsuit in terms of relative progress. *See Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299 & n. 7 (the party seeking abstention requested an extension of time in which to answer the federal plaintiff's declaratory judgment complaint, and used that extension to serve one state complaint and to file motions for partial summary judgment in both of the state actions). This reading is reinforced by the fact that Colonial's counterclaim for declaratory judgment in the Florida lawsuit really has little or nothing to do with Kingland's claim in that lawsuit, and everything to do with Kingland's claim in the Iowa lawsuit. Nor can Kingland be faulted for commencing discovery in the Florida lawsuit, after an answer and counterclaim were filed, while this lawsuit stalled on Colonial's motion to dismiss, transfer, or stay—at least in part because of this court's own delay in reaching Colonial's motion. Again, the "priority" factor weighs only lightly, if at all, in favor of abstention, and strict adherence to "priority" in terms of filing dates of the original actions would invoke the kind of criticism that has been leveled at the "priority" factor "as leading to absurd results." *See Symington*, 50 F.3d at 559.

*v. Does state or federal law control?* Where federal *law* controls most of a parties' claims, that factor is a "major consideration" against *Colorado River* abstention. *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir.2002). However, in this diversity action, none of the parties' claims or counterclaims is governed by federal law. On the other hand, "the presence of state law issues will weigh in favor of abstention only in rare circumstances," and even where a case is gov-

erned entirely by state law, that fact "does not provide a reason for abstention," and in such cases, the governing law factor "cannot be afforded any significant weight." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299 (citing *Moses H. Cone Mem. Hosp.*, 460 U.S. at 26, 103 S.Ct. 927). This factor is all but irrelevant in the present context, where the claims in both fora are governed by state law (Florida and New York), which either forum would be competent to apply.

*vi. Is the state forum adequate to protect the federal plaintiff's rights?* From the analysis of this factor by the Eighth Circuit Court of Appeals in *Federated Rural Electric Insurance Corporation*, it appears that this factor may include another aspect of the "piecemeal litigation" issue:

> Because the Saline County action is capable of deciding issues involving only one [insurance] policy, it is inadequate as a forum for the resolution of issues common to all the policies [at issue in the case]. Resolution of the common issues would require each policy to be litigated individually, or at least would require a second action analogous to the action filed by Federated. Aside from the effect that [the defendants'] strategy has on "piecemeal" litigation, the state court litigation over an individual "piece" is plainly inadequate to protect Federated's rights which involve "the whole pie." Thus, the inadequacy of the state forum weighs in favor of allowing the federal action to proceed.

*Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299. Here, on the other hand, the state forum is adequate to resolve both of Kingland's claims, and is the only forum capable of resolving claims on both the Promissory Note and the Master Subscriber Agreement. Although Kingland argues, on the authority of *Levy v. Alexander*, 170

F.Supp. 439, 441 (N.D.N.Y.1959), that the state forum is not adequate, because it does not provide the advantages of discovery in the federal system, this court does not find that the differences in discovery scope or procedures are necessarily the sort of "rights" this factor was intended to weigh. Rather, it seems to the court that the pertinent question is scope of available relief on the federal plaintiff's *claims* that is at issue. *Cf. Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299. However, the "adequacy" of the state forum here is of little moment, where the claims Kingland asserted in the state and federal fora are entirely severable. Furthermore, the court finds that this factor certainly does not rise to the level of an "exceptional circumstance," because both fora would almost always be adequate when only state-law questions are at issue in a state action and a federal diversity action. Again, even in diversity actions, "exceptional circumstances" are required to warrant *Colorado River* abstention, *Symington,* 50 F.3d at 557, and this court concludes that the absence of any federal claims in either lawsuit is simply not such an "exceptional circumstance."

*vii. Was there any "forum shopping"?* In a decision applying *Colorado River* to a federal declaratory judgment action prior to *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the Eighth Circuit Court of Appeals noted that, "[d]espite the fact that forum shopping is not among the factors enumerated in *Murphy Oil,* it is appropriate that [the court] consider it when relevant." *Symington,* 50 F.3d at 559 (citing *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 299). The question is "whether the federal or state suit is filed … for a vexatious, reactive or tactical reason." *Federated Rural Electric Insurance Corporation,* 48 F.3d at 299 (citing, *inter alia, Moses H. Cone,* 460 U.S. at 17, 103 S.Ct. 927). The court finds nothing improper,

or plainly "vexatious," "reactive," or "tactical," about Kingland's initial decision to file its claim on the Promissory Note where that claim had to be filed, in Florida state court, and its decision to file its separate claim on the Master Subscriber Agreement where Kingland preferred to litigate, this federal forum in Iowa. Kingland had *prima facie* valid claims in both lawsuits and did not "react" to any action by Colonial, for example, by filing a declaratory judgment claim in a favored forum after Colonial asserted a counterclaim in a forum Kingland was likely to find inconvenient. On the other hand, the court suggested above that there are inferences of such "forum shopping," or at least "reactive tactics" to obtain a preferred forum, on the part of Colonial in obtaining an extension of time to answer the complaint in this case, then filing a counterclaim in the Florida lawsuit that is plainly more pertinent to this case. Thus, this additional consideration weighs against abstention.

### 3. Are there "exceptional circumstances" on balance of the factors?

The Florida and Iowa lawsuits are not "parallel," such that the prerequisite for *Colorado River* abstention is not satisfied in this case. Nevertheless, assuming only for the sake of argument that the lawsuits are "parallel," and considering the *Colorado River/Moses H. Cone* factors in the alternative, abstention is not appropriate. Instead, after considering the pertinent factors "in a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone Mem. Hosp.,* 460 U.S. at 21, 103 S.Ct. 927, and weighting the balance of those factors heavily in favor of the exercise of jurisdiction, *id.* at 16, 103 S.Ct. 927, the court concludes that it should retain jurisdiction over the Iowa lawsuit and allow it to proceed. The court has balanced the factors, not " 'to find

some substantial reason for the *exercise* of federal jurisdiction by the district court,'" but " 'to ascertain whether there exist "exceptional circumstances," the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.'" *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (quoting *Moses H. Cone Mem. Hosp.*, 460 U.S. at 25–26, 103 S.Ct. 927, with emphasis in the original). Colonial has not demonstrated that there are "exceptional circumstances" such that " 'repair to the State court would clearly serve an important countervailing interest.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 14, 103 S.Ct. 927, in turn quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236).

### III.   CONCLUSION

The November 27, 2001, motion of defendant Colonial Direct Financial Group, Inc., to dismiss, transfer, or stay the present federal action by plaintiff Kingland Systems Corporation, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny, in favor of another action, also brought by Kingland, in Florida state court is **denied**. This action shall proceed in this forum.

**IT IS SO ORDERED**.