**Brent L. WHITSELL, Plaintiff,**

v.

**BRADSHAW INSURANCE GROUP, INC., Defendant.**

**No. 4:03 CV 0025.**

United States District Court, N.D. Indiana, Hammond Division.

June 15, 2004.

**984**

C. Anthony Ashford, Hammond, IN, for Plaintiff/Petitioner.

David Vandercoy, Valparaiso, Ihor Alexander Woloshansky, Merrillville, John E. Martin, Hammond, for defendant Taylor.

Jane Ann Himsel, Indianapolis, IN, for defendant Thomas.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

Bradshaw Insurance Group, ("BIG") seeks summary judgment on only one issue: whether the profit sharing bonus Plaintiff, Brent L. Whitsell, ("Whitsell" or "Plaintiff"), seeks from BIG is a wage for purposes of the Indiana Wage Payment Statute, Ind.Code § 22-2-5-1(a) & (b); § 22-2-5-2. BIG claims that Plaintiff cannot recover the profit sharing bonus money, treble damages, or costs including attorney's fees under the Indiana Wage Payment Statute.

### I. Background

Whitsell worked as BIG's vice president for sales and marketing from January 2002 until his resignation in September 2002. (Complaint ¶ 5; Answer ¶ 5; Whitsell Dep. at 183, 74; Bradshaw Dep. at 37). In late December 2002, Whitsell and Bill Bradshaw, BIG's President, discussed what compensation would be available to Whitsell if he came to work for BIG. (Whitsell Dep. at 47-49; Bradshaw Dep. at 8-9). They agreed on a $65,000 annual salary; $56,000 of the salary would be paid to Whitsell and BIG would use the rest to pay rent on an apartment in which Whitsell would live rent-free. (Complaint ¶ 6; Answer ¶ 6; Whitsell Dep. at 50-52). They also agreed that Whitsell would be eligible for a profit sharing bonus based on 10% of BIG's total annual profits as calculated by Bill Bradshaw. (Bradshaw Dep. at 16-19; Whitsell Dep. at 54-56, 159).

From their pre-employment conversations, Mr. Whitsell understood that if there were profits six months into the calendar year, then there would be a mid-year distribution of part of the profit sharing bonus. (Whitsell Dep. at 65-67; 153-56). Both men understood that if there were no profits at mid-year, then there would be no mid-year distribution. (Bradshaw Dep. at 15; Whitsell Dep. at 65-67; 153-56). And if there were no profits for the year, then there would be no bonus at all. (Whitsell Dep. at 56).

In the summer of 2002, Whitsell and Bradshaw negotiated over the terms of a written employment contract for Whitsell. (Bradshaw Dep. at 59-65; Whitsell Dep. at 132-33, 175). They were unable to reach agreement on the terms of such a contract. (Bradshaw Dep. at 64; Whitsell Dep. at 175). On September 1, 2002, Bill Bradshaw took the written contract off the table and sent Whitsell an e-mail with an attached letter explaining his view of how their relationship would progress in the future. (Bradshaw Dep. at 65-68 & Ex. 6; Whitsell Dep. at 176-78 & Ex. 6). In the letter attached to the e-mail, Bradshaw stated, "My commitment to you was 10 percent of the profits which will be based on performance just as it was for the other two VP's. The profit bonus will be paid before the end of each year." (Bradshaw Dep. at 68 & Ex. 6; Whitsell Dep. at Ex. 6). Although he believes that he probably read the letter attached to the September 1, 2002, e-mail, Whitsell did not understand that his profit sharing bonus was linked in any way to his performance. (Whitsell Dep. at 177-79).

BIG's other two vice presidents signed written employment contracts in 2002. (Bradshaw Dep. at 16). BIG did have profits as of mid-2002; sometime after they signed the contracts and prior to September 1, 2002, Bradshaw paid the other two vice presidents mid-year profit sharing bonuses. (Bradshaw Dep. at 15-

16). He did not consider performance when awarding these bonuses, believing that the vice presidents should have the entire year to achieve their goals and objectives before such achievement became part of the profit sharing bonus consideration. (Bradshaw Dep. at 74).

On September 11, 2002, Bradshaw paid Whitsell a profit sharing bonus in an amount identical to that paid to the other two vice presidents. (Bradshaw Dep. at 39). Bradshaw did not consider Whitsell's achievement of goals and objectives when awarding the bonus. (Bradshaw at 74). The same day that he received the check, Whitsell resigned. (Bradshaw at 37; Whitsell Dep. at 183). Subsequently, BIG stopped payment on the check. (Bradshaw Dep. at 30–32).

Plaintiff agrees with the factual statements above as asserted by BIG, except for the following contentions of fact: (1) that Plaintiff's mid-year distribution of the profit bonus was based upon "annual" profits; (2) that if there were no profits for the year, then there would be no profit bonus at all (*i.e.*, that the mid-year distribution would somehow have to be paid if there were no profits for the year.); (3) that the mid-year distribution was not based, in part, on Plaintiff's performance; (4) that the profit bonus was wholly dependant on the profitability of Defendant.

BIG contends that even if Plaintiff can prove that he is entitled to the bonus under some other theory, he is not entitled to recover the bonus, treble damages, or costs, including attorney's fees under the Indiana Wage Payment Statute. Therefore, the sole issue before this Court at present is whether the profit sharing bonus Plaintiff seeks from BIG is considered a wage for purposes of the Indiana Wage Payment Statute.

## II. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bragg v. Navistar Int'l Trans. Corp.*, 164 F.3d 373 (7th Cir.1998). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED.R.CIV.P. 56); *Larimer v. Dayton Hudson Corp.*, 137 F.3d 497 (7th Cir.1998). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Weicherding v. Riegel*, 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir.1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library Sys.*, 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir.1996). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505.

### III. Discussion

The Indiana Wage Payment Statute provides in pertinent part:

> (a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semi-monthly or bi-weekly, if requested, the amount due the employee.
> (b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment.

Ind.Code § 22–2–5–1(a)–(b). If an employer fails to comply with these provisions, it is subject to the following statutory penalties:

> Every such person, . . . . who shall fail to make payments of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due.

Ind.Code § 22–2–5–2. Whitsell alleges that these statutory provisions apply to his claim for $20,240.97 profit sharing bonus. BIG contends that the decision in *Herremans v. Carrera Designs*, 157 F.3d 1118, 1121 (7th Cir.1998), controls this case. In *Herremans*, the Seventh Circuit affirmed this Court's finding that the unpaid bonuses did not constitute wages for purposes of the Indiana Wage Payment Statute.

First, the Court found that, under Indiana law: "[p]rofits are not wages, and neither is a fraction of profits wages; and so a bonus that is based on the performance of a plant rather than on the time or determinable output of the employee is not wages either." *Herremans*, 157 F.3d at 1121; (citing *Pyle v. National Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300–01 (Ind.App.1994)). Second, the Seventh Circuit also agreed with this Court that the bonus was based on a share of the "annual profits" of Carrera Designs and could not, therefore, have possibly been calculated or paid on the semi-monthly or bi-weekly schedule that Ind.Code § 22–2–5–1(a) contemplated. This fact also weighed in favor of the finding that the bonus was not wages.

BIG argues that the same two factors are present in this matter. BIG contends there can be no question that Whitsell's profit sharing bonus was dependent upon BIG's financial success. BIG argues under the theory that if there were no profits there was to be no bonus. Also, BIG claims that Whitsell's bonus was based on annual profits. While there happened to be profits in mid–2000, making a mid-year distribution possible, BIG argues it would have most certainly not been possible to determine the annual profits in such a way as to pay them on a semi-monthly or bi-weekly schedule throughout the year.

However, Whitsell claims *Herremans* is distinguishable from the case at hand. First, Whitsell argues that the plaintiff had been fired during the middle of the year, before the bonus was vested and paid. Secondly, he argues that the bonus was calculated as a 40% share of "annual" profits and not simply 40% of the company's profits or even mid-year profits. Plaintiff seems to focus on the theory of a vested distribution as a form of deferred compensation. Plaintiff alleges that what

is important to focus on is the substance of the compensation rather than the form, and relies on several cases lending their various definitions to the term "wage."

■ Plaintiff claims that he and Mr. Bradshaw agreed that his bonus would be based on the profits that BIG earned every six months rather than upon BIG's annual profits. Based on such, he believes his bonus was vested and that he should be entitled to recover under the Indiana Wage Payment Statute. However, whether a bonus is deemed a wage for purposes of the Indiana Wage Payment Statute depends on whether the bonus was linked to the financial operations of the company. *See, Herremans v. Carrera Designs,* 157 F.3d 1118 (7th Cir.1998); *see also, Highhouse v. Midwest Orthopedic Institute, P.C.,* 807 N.E.2d 737 (Ind.2004).

■ Plaintiff's belief that his bonus "vested" and that he should be entitled to recover treble damages and fees under the Wage Payment Statute is inaccurate. Even assuming Plaintiff identified a factual dispute about when his bonus may have "vested," such dispute would not impact his wage payment claim. Under *Highhouse,* whether a bonus was a wage hinged primarily upon whether the bonus was linked to the financial operation of the company and secondarily upon whether the bonus was or could reasonably have been payable at regular 10–day intervals. In this case, there can be no dispute that the profit sharing bonus was directly linked to BIG's financial success. Even Whitsell's own deposition reveals such. Therefore, whether or when Plaintiff's bonus "vested" makes no difference in regard to the Wage Payment Statute.

In conjunction with the argument that his bonus was "vested" and therefore a wage, Plaintiff further argues that because a mid-year distribution was made in mid–2000, such allows the bonuses allotted to him to fall under the Indiana Wage Pay-

ment Statute. However, this is still a far cry from adhering to the language regarding semi-monthly or bi-weekly payments as provided for under the Indiana Wage Payment Statute. A bonus payment tied to results of the employer's overall operations is not consistent with the time constraints imposed by the Wage Payment Statute. *Manzon v. Stant Corp.,* 138 F.Supp.2d 1110, 1114 (S.D.Ind.2001). The statute imposes a penalty when wages are not paid within ten days of the date they are "earned." *Id.* As noted in *Manzon,* bonus calculations, as a general rule, often cannot be calculated within such a short period of the time. Furthermore, Plaintiff has provided no evidence to contradict the fact that the reason a mid-year distribution was made possible in mid–2000 was the direct result of the financial success of BIG, which is clearly relevant to whether the bonus should be deemed a wage for purposes of the Indiana Wage Payment Statute.

While Whitsell does not seem to dispute that the profit sharing bonus was linked to BIG's financial success, he claims that because it was not wholly dependent on the financial success he is still entitled to the bonus. This Court assumes that Plaintiff's position is that his bonus was more like a wage than Herremans' because Bill Bradshaw testified he could consider Whitsell's progress, although Defendant alleges such was not taken into consideration. Regardless, in light of *Manzon v. Stant Corp.,* 138 F.Supp.2d 1110 (S.D.Ind.2001), this argument fails. Following *Herremans,* Judge Barker granted the employer summary judgment on the wage claim. In the process, she rejected the argument that the addition of "personal goals and objectives" to the bonus calculation made the bonus wages. She stated:

> Manzon attempts to distinguish this case, claiming that in *Herremans* and other cases holding that bonuses were

not wages, "the compensation at issue was *solely* tied to the overall performance of the defendant company." Plaintiff's Response Brief at 16. Manzon argues that his compensation was based in part on his own performance and is therefore a "wage" under the statute. *Id.* It is certainly true that the Employment Agreement conditioned his pay not only on the success of the company, but also on "the achievement of individual personal objectives." Employment Agreement, Section 2(b). However, we do not agree that the principle enunciated in *Herremans* was meant to be as limited as Manzon argues it should be. In any situation in which additional pay is based on the success of the company, the reasonable assumption is that the employee receiving additional pay somehow contributed to that success through his own performance. The Employment Agreement in this case serves to make that assumption explicit.

138 F.Supp.2d at 1114.

Simply put, in Indiana, it still appears to be good law that a bonus that is linked to some type of contingency, like the financial success of the company, is not considered a wage for purposes of the Indiana Wage Payment Statute. The evidence before this Court demonstrates that had BIG not made a profit, Plaintiff would not have received a bonus. Accordingly, under *Herremans,* as well as *Highhouse,* Plaintiff's bonus in this instance, was not a wage for purposes of the Indiana Wage Payment Statute. As stated, this is not to say that Plaintiff cannot prove he is entitled to the bonus under some other theory, it is only to say that he is not entitled to such under the Indiana Wage Payment Statute.

## IV. Conclusion

Based on the forgoing, BIG's motion for partial summary judgment on the sole issue of whether the profit sharing bonus Plaintiff seeks from BIG is a wage for purposes of the Indiana Wage Payment Statute, Ind.Code § 22–2–5–1(a) & (b); § 22–2–5–2 is **GRANTED.** Plaintiff is not entitled to recover the profit sharing bonus money, treble damages, or costs including attorney's fees under the Indiana Wage Payment Statute.

**IT IS SO ORDERED.**