Lester E. POTTS, Plaintiff-Appellant,

v.

REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, and Red Carpet Cab, Defendants-Appellees.

No. 2–1084A304.

Court of Appeals of Indiana, Second District.

March 20, 1985.
Rehearing Denied April 25, 1985.

1. Fultz's issues 3, 4, 7, 8, 9, 10, 11, and 12.

Ralph S. Adams, Legal Services of Maumee Valley, Fort Wayne, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

This appeal comes to us from a decision of the Review Board of the Indiana Employment Security Division (Review Board) affirming the Appeals Referee's denial of

Lester E. Potts' claim for unemployment benefits.

## STATEMENT OF THE FACTS

The evidence most favorable to the decision is as follows: Lester Potts was a dispatcher for the Red Carpet Cab Company from August, 1982 until he was fired on October 14, 1983. His claim for unemployment benefits was disallowed by a deputy; this decision was affirmed by a referee after a hearing. The referee made the following findings of fact and conclusions of law, which were affirmed by the Review Board in a decision without a hearing:

"FINDINGS AND CONCLUSIONS: The evidence shows that the claimant worked for this employer from August, 1982 to October 14, 1983 as a dispatcher working various days and hours at $3.50 per hour. The evidence establishes that the employer herein provides taxicab services to the residents of Fort Wayne, Indiana. In September, 1983, while an employee of this employer, the claimant invested $500.00 in a business which organized as Peoples Transportation Corporation. The purpose of Peoples Transportation Corporation was to provide taxicab services to residents of Fort Wayne, Indiana. The evidence indicates that Peoples Transportation Corporation had made application with the City of Fort Wayne which would have been direct competition with the employer herein.

The evidence of record establishes that during October, 1983 the claimant admitted to the President of the employer herein that he had invested in the competing organization. Soon thereafter the employer and the claimant terminated their employment relationship.

The evidence of record establishes that the employer did not have a published rule prohibiting employees from investing in other companies. The evidence of record establishes that the employer and the claimant had not entered into any express non-competitive agreement.

The evidence of record establishes that the claimant did not hold any Director's position or organizer's position in the new corporation. The evidence of record does indicate that other employees of the employer herein organized and directed the new corporation. Chapter 15–1 of the Act provides for the ineligibility of an individual who is discharged by an employer for a just cause within the meaning of the Act.

In *Wakshlag v. Review Board of the Indiana Employment Security Division*, (1980) Ind.App., 413 N.E.2d 1078 the court stated:

'Whether unemployed persons are without fault must be determined upon the facts and circumstances of the individual case. (citations omitted) Determination of cause is a question of fact. *Gardner, supra* [162 Ind.App.125, 318 N.E.2d 361]. It is a conduct evidencing such willful or wanton disregard of the employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or a carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional or substantial disregard of the employer's interests, or of the employee's duties or obligation to his employer.' (citations omitted).

In consideration of the facts of this matter and the above definition of a discharge for just cause the referee concludes that the claimant's termination was for a just cause within the meaning of the Act. Several former co-workers of the claimant, who were employees of this employer, organized this competing business and the claimant invested in that business at the request of these workers. This act of the claimant damaged this employer's trust and confidence in the ability of the claimant to effectively perform his job.

DECISION: The deputy's determination is affirmed."

## STATEMENT OF THE ISSUE

Potts raises one issue—whether there are adequate findings and sufficient evidence to support the Review Board's ultimate conclusion that he was discharged for just cause.

## DISCUSSION AND DECISION

 Our limited standard of review is a familiar one: when reviewing the sufficiency of the evidence to support the Review Board's conclusion, this court will not weigh the evidence; only that evidence most favorable to the judgment and the reasonable inferences therefrom will be considered. We may reverse the decision of the Review Board only if reasonable men would be bound to reach the opposite conclusion from the evidence in the record. *Cargal v. Review Board of Indiana Employment Security Division,* (1981) Ind. App., 428 N.E.2d 85, 87. The Review Board's decision as to all questions of fact is conclusive and binding on the Court of Appeals. *Jones v. Review Board,* (1982) Ind.App., 442 N.E.2d 1120. Initially, the burden of proving that the employee was fired for just cause is on the employer; the burden then shifts to the employee to rebut the employer's case. *Cargal, supra.*

The referee found, and the Review Board agreed, that Potts had been terminated for just cause because he damaged the employer's trust and confidence in the ability of the claimant to effectively perform his job. This conclusion is evidently based on IND. CODE 22–4–15–1(e)(8), which states that discharge for "just cause" includes "any breach of duty in connection with work which is reasonably owed an employer by an employee".

 Determination of cause is a question of fact. *Wakshlag v. Review Board,* (1980) Ind.App., 413 N.E.2d 1078.

"It is conduct evidencing such wilful or wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which an employer has a right to expect of his employee, or a carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional or substantial disregard of the employer's interest, or of the employee's duties or obligation to his employer."

*Wakshlag, supra,* at 1082.

Potts argues that the employer's burden of proof includes not only proof of breach of a duty, but proof that a duty of loyalty to the employer does indeed exist. He admits that while an employee has an implied duty of loyalty to the employer, this duty is not breached when the employee merely assists in the organization of a rival business.

 Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal. Rest.2d *Agency,* Sec. 387. An agent may not place himself in a position wherein his own interests are potentially antagonistic to those of his principal. *Community Counseling Service, Inc. v. Reilly,* (4th Cir.1963) 317 F.2d 239, 244 (footnote 9); 56 C.J.S. *Master & Servant,* Sec. 42(e).

An Indiana decision, *H.C. Bay Co. v. Kroner,* (1925) 83 Ind.App. 541, 149 N.E. 184, described this duty of loyalty in the following manner:

"We are of the opinion that the contract of employment required good faith on the part of the employer or employee in their conduct toward each other. Appellee was required to honestly and in good faith carry out the contract as he understood it and the requirements of his employer in the method, manners, etc. of doing the work which he was employed to do, so as to carry out the work to the best interest of the employer. This, in our judgment, should be the rule in absence of any directions from the employer."

*Kroner, supra,* at 544, 149 N.E. 184.

 The discharge of an employee may be justified by, among other things, assertion by the employee of adverse or disloyal interest. 1 I.L.E. Agency, Sec. 12 (1957).

■ It is also a well-settled rule, as Potts states, that a former employee may compete with his employer after the termination of the employment—just as a stranger may do—or he may enter a competitor's employment. 53 Am.Jur.2d *Master & Servant*, Sec. 106.

■ Prior to his termination, an employee must refrain from actively and directly competing with his employer for customers and employees and must continue to exert his best efforts on behalf of his employer. *Maryland Metals, Inc. v. Metzner*, (1978) 282 Md. 31, 382 A.2d 564. But an employee may even make arrangements to compete, such as investments or the purchase of a rival corporation or equipment, except that he cannot properly use confidential information peculiar to his employer's business, before he leaves his employ. Rest.2d *Agency*, Sec. 393 Comment (e). *See Maryland Metals, supra; National Rejectors, Inc. v. Trieman*, (1966) Mo., 409 S.W.2d 1. The above-cited decisions balance the concern for the "integrity of the employment relationship" against the privilege of employees to prepare to compete against their employers without fear of breaching their fiduciary duty of loyalty. *Maryland Metals, supra*, 382 A.2d at 569.

Obviously these types of cases are extremely fact-sensitive. Often they involve a situation wherein the former employers asked for injunctive relief restraining further operation of the employees' newly-formed rival concerns. *See, e.g., Midland-Ross Corp. v. Yokana*, (3rd Cir.1961) 293 F.2d 411; *National Rejectors, supra; Wilborn v. Heniff*, (1968) 95 Ill.App.2d 155, 237 N.E.2d 781. The employees voluntarily leave the service of the employer and start their own competing business; the former employer alleges that the employee has misappropriated trade secrets or knowledge peculiar to his own company. In denying injunctive relief, generally courts recognize the spirit of free enterprise and the importance of vigorous competition in our society. *Maryland Metals, supra*, 382 A.2d at 568.

In addition to citing the above type of case, i.e., injunctive relief, Potts cites other decisions wherein the courts have decided that no breach of duty has occurred. *See Franklin Music Co. v. American Broadcasting Co.* (3rd Cir.1979) 616 F.2d 528 (music company brought action against former president alleging violations of federal anti-trust law and various contract and tort claims under state law); *United Aircraft Corp. v. Boreen*, (3rd Cir.1969) 413 F.2d 694 (complaint alleged breach of covenant not to compete, wrongful interference with contractual rights, breach of fiduciary duty and conspiracy); *Seward v. Union Pump Co.*, (S.D.Tx.1977) 428 F.Supp. 161, 167. (former employee sued to recover bonus claims due); *Fish v. Adams*, (1981) Fla. App. 401 So.2d 843 (former employer alleges breach of duty of loyalty and damage to business); *Hamilton Depositors Corp. v. Browne*, (1940) 199 Ark. 953, 136 S.W.2d 1031, 1034 (former employees sue for commissions and bonuses wrongfully withheld). We note that none of these cases address the precise factual situation presented herein.

While we agree that the just cause issue in the instant case is a close one, we are mindful of our standard of review, which is extremely limited and requires us to consider only the evidence most favorable to the Review Board's judgment and all reasonable inferences therefrom.

■ The evidence shows that a number of dissident employees of Red Carpet Cab went on strike and picketed the cab company. Potts asked his employer, Walchle, for permission to leave while the picketing was going on because he did not want to fight with his co-workers. Walchle consented. These strikers eventually decided to form the competing cab company. They solicited funds from Potts and he invested $500.00. Potts denied that he participated in organizing the rival company in any way, but admitted that he planned to leave Red Carpet once Peoples Cab was off the ground and become its dispatcher.

Potts was the dispatcher for Red Carpet Cab; therefore his duties included receiving calls for cabs from customers and send-

ing taxis to pick up those customers. Once Potts made known his investment in a rival concern and his intention to leave Red Carpet Cab, his employer may reasonably believe that Potts' devotion to efficient dispatch of cabs would diminish. As a matter of fact, Walchle claimed that after he had terminated Potts he found evidence that Potts had "sabotaged" his business by dispatching late service calls. Since Red Carpet Cab was the only cab company in Fort Wayne, dissatisfaction with its performance would directly produce customers for Peoples once it started operating. Walchle stated that he did not want people who had invested in, and were intending to work for, a competing company in such a small market. If Potts planned to work for the other company, his loyalty did not lie with Walchle. Even Potts agrees that an employee has a fiduciary duty of loyalty to his employer. We do not believe the Review Board erred in deciding that Potts breached that duty and was discharged for just cause.

For the foregoing reasons, this cause is affirmed.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.