Michael E. HIGHHOUSE, M.D.,
Appellant (Plaintiff below),

v.

MIDWEST ORTHOPEDIC IN-
STITUTE, P.C., Appellee
(Defendant below).

No. 89S01–0308–CV–386.

Supreme Court of Indiana.

May 5, 2004.

Jeffrey R. Gaither, T. Joseph Wendt, Indianapolis, IN, Attorneys for Appellant.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Norris Cunningham, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

We hold that a bonus calculated on the basis of both the employee's production and also the expenses of the overall business is not a "wage" governed by the Indiana Wage Payment Statute.

**Factual and Procedural Background**

In 1996, Midwest Orthopedic Institute, P.C. ("MOI") employed Dr. Michael Highhouse ("Highhouse") as an orthopedic surgeon. The "Employment Agreement" called for a base annual salary of $250,000 payable monthly and an "annual bonus" for each calendar year payable February 28 of the following year. In practice, the bonus was paid at the end of each calendar quarter, based on MOI's collections for services rendered by Highhouse to MOI's patients, less an allocation of expenses of MOI's overall operations. The calculation and timing of the bonus payments are described in more detail below.

On March 2, 1999, Dr. Highhouse gave notice of his resignation effective on June 30, 1999. After Dr. Highhouse's departure, MOI continued to receive collections for his services rendered before that date, but contended that Highhouse was entitled to no further compensation. Dr. Highhouse sued, claiming he was entitled to bonus payments based on post-June 30 receipts, and that the bonus constituted a "wage" entitling him under the Indiana Wage Payment Statute to a payment of twice the unpaid amounts plus attorney's fees. On cross motions for summary judgment, the trial court held that Highhouse had no right to bonus payments for collections after the effective date of his resignation. The Court of Appeals reversed, holding that Highhouse was entitled to these payments and also that the unpaid bonus constituted "wages" for purposes of the Wage Payment Statute. This Court granted transfer.

## I. Bonus Based on Post Resignation Collections

The Court of Appeals took the view that Highhouse's right to bonus payments vested at the time he performed the services that the bonus was based upon. *Highhouse v. Midwest Orthopedic Inst.*, 782 N.E.2d 1006, 1011 (Ind.Ct.App.2003). We agree with that interpretation of this agreement. Accordingly, as a matter of contract law, Highhouse was entitled to a bonus based on post-resignation collections.

Paragraph 9 of the employment agreement provides:

*Termination without Cause.* Employer may terminate this Agreement at any time and without cause effective upon ninety (90) days advance written notice provided to Employee. In such event, Employee shall continue to render his services, and shall be paid his regular

compensation up to the date of termination.

MOI claims this clause applies to termination by either the employee or the employer, and provides for payments to stop at the date employment ends. First, this provision does not appear to apply to resignation and therefore does not unambiguously terminate the right to payment after the effective date of a resignation. By its terms it applies only if MOI terminates the employee, which can be done only by 90 days notice.

■ After an employee leaves an employer, bargained-for compensation is still payable when earned in the absence of a clear and unambiguous intent to terminate payments when employment ends. Moreover, absent some other arrangement or policy, when an employer makes an agreement to provide compensation for services, the employee's right to compensation vests when the employee renders the services. *See, e.g., Baesler's Super-Valu v. Ind. Comm'r of Labor*, 500 N.E.2d 243, 246 (Ind.Ct.App.1986); *Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 46–47 (Ind.Ct. App.1983). Although not entirely clear on the point, Highhouse's agreement does not unambiguously call for termination of bonus payments as of his resignation. Because there is no clear indication that Highhouse was to be denied a bonus based on collections after his resignation, as a matter of contract law, the bonus is payable on post-June 30, 1999 collections for Highhouse's services.

■ A post termination bonus is to be calculated in the same manner as Highhouse's earlier bonuses. The contract is less than precise in providing that the bonus was to be "based upon these factors." However, the practice of the parties in calculating the bonus provides reasonably clear guidance as to its meaning. According to the undisputed affidavit of MOI's accountant, the bonus was paid quarterly by deducting "fixed, variable and personal expenses" from collections "attributable to Dr. Highhouse." These expenses were for the most part "allocated costs over which [Highhouse] had no control." This course of conduct, which is undisputed, is a reliable guide to determine the contract's meaning, and we accept it as such. *See, e.g., Bain v. Memorial Hosp.*, 550 N.E.2d 106, 110 (Ind.Ct.App. 1990).

## II. Highhouse's Bonus is not a "Wage"

Highhouse's right to statutory penalties for failure to pay "wages" every two weeks or semimonthly is another matter. Under the Indiana Wage Payment Statute, Ind. Code § 22–2–5–2 (1998), ". . . [e]mployees, upon separation from employment, must be paid the amount [of wages] due them at their next and usual payday." *Fardy v. Physicians Health Rehab. Services, Inc.*, 529 N.E.2d 879, 882 (Ind.Ct.App.1988). "Wage" is defined by statute as: "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." I.C. § 22–2–9–1. Failure to pay subjects the employer to a penalty of up to double the unpaid wage and attorney's fees. I.C. § 22–2–5–2.

■ The Court of Appeals concluded that a bonus is a wage under the statute if the bonus directly relates to the time that an employee works, is paid with regularity, and is not dictated by the employer's financial success. *Highhouse v. Midwest Orthopedic Inst.*, 782 N.E.2d 1006, 1013–14 (Ind.Ct.App.2003) (citing *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind.Ct.App.1992)). We think this formulation of the test of "wages" is generally correct, but leads to

the conclusion that Dr. Highhouse's bonus, which depended partially upon results of MOI's operations, is not a wage. · MOI employed a number of physicians at its offices in Connersville and Richmond. The bonus was to be paid pursuant to paragraph 3(b) of the agreement. It provides that the bonus was to be "based upon [Highhouse's] productivity, collection of accounts, [and] office expenses for both offices." "Net Income" was defined as collections for the services of all physicians less "ordinary and necessary expenses, at all locations." The bonus thus turned on both Highhouse's productivity and also on "expenses of MOI's operations", presumably allocated based on revenue. Highhouse had no control over most of these expense items and they obviously affected MOI's bottom line. Thus, while it is clear that Dr. Highhouse's efforts contributed to the calculation of his bonus, they were not the sole factor. Billings for Highhouse's services were certainly substantially offset, and could at least theoretically have been outweighed altogether by his share of MOI's expenses.

■ A "bonus" is a wage "if it is compensation for time worked and is not linked to a contingency such as the financial success of the company." *Pyle v. Nat. Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind.Ct.App.1994). *See Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121–22 (7th Cir.1998) (plaintiff's pay based not on "his own time or effort or product ... but, on the profits of his plant" not a wage); *Manzon v. Stant Corp.*, 138 F.Supp.2d 1110, 1113 (S.D.Ind. 2001) (bonus based on "the attainment of financial targets established by [the employer] and the achievement of individual personal objectives" was not a wage). A bonus whose calculation depends on expenses of the overall operations has the same problem.

■ There are also practical reasons why a bonus of this sort is not a "wage." A bonus payment tied to results of the employer's overall operations is not consistent with the time constraints imposed by the Wage Payment Statute. The statute imposes a penalty when wages are not paid within ten days of the date they are "earned." *Manzon*, 138 F.Supp.2d at 1114. As noted in *Manzon*, bonus calculations, as a general rule, often cannot be calculated within such a short period of the time after the services are performed. Here, because Highhouse's bonus was based on collections for his services, not billings, substantially more than ten days after the services were performed might well be needed before the bonus amounts can be calculated. Even assuming the bonus was not "earned" until the patient's bill is paid, the allocation of expenses for the overall operations often cannot reasonably be expected to be calculated within ten days of that time. Moreover, the contract itself called for payments "annually" and the bonus was paid without dispute only quarterly over the more than three years Highhouse was employed by MOI. An employer may not escape the Act by obtaining the employee's agreement that wages are not payable within the statutorily prescribed times. But the provision for annual payments lends support to the view that both parties recognize that frequent calculation and payment was difficult if not impossible. In short, the bonus is not a "wage" within the meaning of the Wage Payment Statute.

### Conclusion

This case is remanded to the trial court with instructions to enter summary judgment for Highhouse on the claim for bonuses calculated on collections after June 30, 1999, and to enter summary judgment

for MOI on the claim for nonpayment of wages under the Wage Payment Statute.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.