**KOPKA, LANDAU & PINKUS, Appellant–Plaintiff/Third–Party Defendant,**

v.

**Larry HANSEN, Rick Skiles, and Skiles Hansen LLP d/b/a Skiles Hansen Cook & DeTrude, Appellees–Defendants/Third–Party Plaintiffs.**

No. 49A02–0611–CV–987.

Court of Appeals of Indiana.

Oct. 18, 2007.

---

Eric D. Johnson, Indianapolis, IN, Attorney for Appellant.

Janet M. Prather, Skiles DeTrude, Indianapolis, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff/counter-defendant Kopka, Landau & Pinkus (KLP) appeals two of the trial court's orders—one in which the trial court entered summary judgment in favor of appellees-defendants/counter-plaintiffs Larry Hansen, Rick Skiles, and Skiles Hansen LLP d/b/a Skiles Hansen Cook & DeTrude (SHCD) (collectively, the appellees) on KLP's complaint, and another in which the trial court entered judgment in favor of the appellees on their counterclaims against KLP.

KLP argues that the trial court erroneously concluded that (1) KLP failed to prove that Hansen breached his fiduciary duty of loyalty, (2) the appellees are entitled to damages and attorney fees under the Indiana Wage Payment Statute,[1] and (3) the appellees successfully proved their counterclaims for frivolous litigation and malicious prosecution against KLP.

Finding that the appellees are not entitled to damages or attorney fees pursuant to the Indiana Wage Payment Statute and finding no other errors, we affirm in part, reverse in part, and remand with instructions to calculate the amount of prejudgment interest owed to the appellees.

## FACTS

Prior to September 18, 2000, Hansen worked as an associate attorney for KLP. Robert Kopka and Steven Landau were the sole owners of the firm. According to the KLP Employee Handbook, Hansen was an at-will employee, "which means that either you or KLP can terminate this relationship for any reason at any time." Appellees' App. p. 58.

In September 2000, KLP employed six associate attorneys and seven support staff employees in its Indianapolis office. Hansen decided to resign from KLP and, according to Hansen, when other KLP employees learned of his planned exit, they asked if they could move with him to his next firm. On September 18, 2000, Hansen gave notice that he was resigning from KLP. That same day, four of the remaining five associate attorneys and three of the support staff employees also resigned. By late September 2000, the remaining KLP associate resigned. Hansen became a partner at SHCD, which is also where the five associates and three support staff employees became employed following their resignations from KLP.

On February 1, 2001, KLP filed a four-count complaint against the appellees.[2] On May 17, 2001, SHCD was granted a Rule 12(b)(6) dismissal because KLP had named it as a defendant without leveling any claims against it. On May 24, 2001, KLP filed a first amended complaint, which included three new counts against SHCD. On June 13, 2001, the appellees filed an answer and counterclaims against KLP, filing claims for malicious prosecution and for compensation and damages to Hansen pursuant to the Wage Payment Statute.

On January 24, 2002, the appellees moved for summary judgment against the seven counts in KLP's first amended com-

---

1. Ind.Code §§ 22–2–5–1, –2.

2. KLP initially filed the complaint in Lake County, a county of non-preferred venue. In April 2001, upon the appellees' motion, the Lake County court transferred this case to Marion County, which was a preferred venue.

plaint. On February 19, 2002, KLP added an eighth count in a second amended complaint, and on March 1, 2002, the appellees filed a summary judgment motion against that count. KLP's second amended complaint includes the following eight counts:

1. Breach of fiduciary duty by Hansen, whom the complaint alleged to be "the managing partner" of KLP's Indianapolis office, appellees' app. p. 239;

2. Tortious interference with business opportunities by Hansen;

3. Tortious interference with the business relationship between KLP and its employees by Hansen;

4. Tortious interference with business opportunities by Skiles;

5. Action in accounting against SHCD and Hansen;

6. Tortious interference with business opportunities by Hansen as an agent of SHCD;

7. Tortious interference with the business relationship between KLP and its employees by Hansen as an agent of SHCD; and

8. Breach of contract by Hansen.

*Id.* at 238–57.[3] Following a hearing, the trial court granted summary judgment in favor of the appellees on all eight counts on March 12, 2003.

On July 28, 2006, the appellees' two counterclaims against KLP were tried to the bench. On October 10, 2006, the trial court entered judgment in favor of the appellees, finding, in pertinent part, as follows:

The court finds that Third–Party Hansen has proved by a preponderance of the evidence that he is entitled to relief under the Indiana Wage Payment Statute in the amount of [$27,062.12], plus double the liquidated damage amount [$54,124.24], for a total amount of [$81,186.36] as against [KLP].

Third–Party Plaintiffs have further demonstrated by a preponderance of the evidence that they are entitled to attorney fees under the Wage Payment Statu[t]e and have further shown they are entitled to recover fees under their cause of action for malicious prosecution, abuse of process, and the frivolous lawsuit laws. They correctly point out ... that although attorney fees are recoverable under these provisions they are entitled to only one award of reasonable attorney fees. The Court finds that of the attorney fees set forth in Trial Exhibit 8, a reasonable fee for the prosecution of the Wage Payment Statute to be [$38,500] and [$22,000] for the frivolous lawsuit, abuse of process and malicious prosecution claims.

It is therefore ordered, adjudged and decreed by the court that judgment is entered for [Hansen] for [$81,186.36] plus reasonable attorney fees of [$38,-500] for a total judgment of [$119,-686.36].

It is further ordered by the court that judgment is entered for [SHCD] in the amount of [$22,000].

---

**3.** KLP does not include the second amended complaint in its appendix, which is woefully lacking in nearly every regard. Among other things, KLP omits the following documents: documents designated as evidence by the appellees on summary judgment, most of the documents attached as exhibits to the appellees' summary judgment brief, and the appellees' reply brief on summary judgment. We direct counsel's attention to Indiana Appellate Rule 50(A)(2)(f), which directs that the appellant include in the appendix "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal...." It is inappropriate for an appellant to include only its own documents in the appendix; instead, it must include *all* relevant documents—including those filed by the opposing party.

Appellees' App. p. 20. KLP now appeals the summary judgment order on count 1 of its complaint and the judgment in the appellees' favor on their counterclaims.

## DISCUSSION AND DECISION

### I. Summary Judgment

KLP argues that the trial court erroneously granted summary judgment in Hansen's favor on count 1 of its complaint against him. As we consider this argument, we note that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

■■■ KLP argues that it sufficiently pleaded a breach of fiduciary duty claim against Hansen to withstand summary judgment.[4] An employee owes his employer a fiduciary duty of loyalty. *Davis*, 501 N.E.2d at 1104. To that end, an employee who plans to leave his current job and go into competition with his current employer must walk a fine line:

> Prior to his termination, an employee must refrain from actively and directly competing with his employer for customers and employees and must continue to exert his best efforts on behalf of his employer. But *an employee may even make arrangements to compete,* such as investments or the purchase of a rival corporation or equipment, except that he cannot properly use confidential information peculiar to his employer's business, before he leaves his employ. [These rules] balance the concern for the "integrity of the employment relationship" against *the privilege of employees to prepare to compete against*

---

**4.** We acknowledge, as the appellees point out, that in its complaint, KLP alleged that Hansen "was the managing partner of the Indianapolis office" of KLP and that he "breached his fiduciary duty to his partnership." Appellees' App. p. 239, 241. Furthermore, in the parties' briefs on the appellees' motion for summary judgment, the *sole* point of contention and the only matter discussed with respect to Count 1 of KLP's complaint was whether Hansen was a partner or associate of KLP. On appeal, KLP concedes that Hansen was an associate, rather than a partner, of KLP. Appellant's Br. p. 22. It insists, however, that Hansen's employment status is of no moment, inasmuch as employees owe a fiduciary duty to their employers. *Davis v. Eagle Prods., Inc.*, 501 N.E.2d 1099, 1104 (Ind.Ct. App.1986). We are somewhat troubled by KLP's attempt to skew the argument it made at trial court to a point at which it could easily be concluded that KLP is impermissibly raising a new argument on appeal. But given our wont to resolve matters on their merits, and given that the merits do not support KLP's argument in any event, we will address the substance of its argument that Hansen breached a fiduciary duty to his employer.

*their employers without fear of breaching their fiduciary duty of loyalty.*

*Potts v. Review Bd. of the Ind. Emp. Sec. Div.,* 475 N.E.2d 708, 712 (Ind.Ct.App. 1985) (emphases added) (internal citations omitted). The *Potts* court also acknowledged that "these types of cases are extremely fact-sensitive." *Id.* The comments to the Restatement (Third) of Agency similarly recognize that

> [i]n retrospect it may prove difficult to assess the propriety of a former agent's conduct because many actions may be proper or improper, depending on the intention with which the agent acted and the surrounding circumstances. For that reason it may be difficult to draw a clean distinction between actions prior to termination of an agency relationship that constitute *mere preparation for competition, which do not contravene an employee's or other agent's duty to the principal,* and actions that constitute competition.

Restatement (Third) of Agency § 8.04 cmt. c (2006) (emphasis added). Thus, although an employee may not actively and directly compete with his current employer, he may prepare to do so without breaching his duty of loyalty.

■ Given our standard of review, we must construe the evidence in KLP's favor. The sum total of the evidence supporting this claim is deposition testimony from a paralegal, Annissa Uptegraft, and an associate, Michael Aspy. Uptegraft provided the following relevant deposition testimony:

A. I was sitting in my office one day, and [Hansen] walked in. He put a Post–It note down on the corner of my desk and wrote a dollar figure on that Post–It note.

Q. Do you remember the dollar figure?

A. Yes, I do.

Q. How much?

A. $40,000.

\* \* \*

Q. Did he talk with you about that?

A. He said to me, Is this what it would take?

\* \* \*

Q. Okay. What did you tell him when he said, Is this what it would take?

A. I believe I told him, Yes, that's what I told you.

Q. When you say, yes, that's what you told him, did you tell him previously that it would take $40,000 for you to go with him?

A. We had discussed what it would take prior to that, yes.

Appellees' App. p. 451–53. And Aspy testified as follows:

Q. Did [Hansen] tell you whether or not he was trying to get some of the other attorneys to go with him?

A. I think he told me that he would like to make sure that everybody that was there [at KLP] had an opportunity to go with him, including myself.

Q. Okay. Prior to September 18th of 2000, did he ask you if you wanted to go to [SHCD]?

A. Yes.

*Id.* at 390.

Even when we construe this evidence in KLP's favor, we do not find that it establishes that Hansen was actively and directly competing with KLP while still employed there. He was certainly preparing to compete by questioning KLP employees about their desire, if any, to leave KLP and work for SHCD in the future. He was gathering information about Uptegraft's salary requirement and Aspy's willingness

to quit his job. He expressed a desire to find positions for all of the KLP employees at SHCD. There is no evidence, however, that Hansen made formal offers of employment with SHCD to KLP employees or that he took actions that constituted anything more than mere preparation to compete with KLP. Consequently, we find that the trial court properly entered summary judgment in Hansen's favor on this count of KLP's complaint.

## II. Counterclaims

KLP next argues that the trial court erroneously granted judgment in favor of the appellees on their counterclaims for wages and damages pursuant to the Wage Payment Statute and malicious and frivolous prosecution.

■ Where, as here, a trial court enters sua sponte findings, those findings "control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings." *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* To determine that a finding of fact or conclusion of law is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.*

### A. Wage Payment Statute

KLP argues that Hansen is not entitled to damages and fees pursuant to the Wage Payment Statute because the compensation that KLP neglected to pay him—and to which he is concededly entitled—does not qualify as a wage under the statute.

The Wage Payment Statute requires that every employer pay its employees "at least semi-monthly or biweekly, if requested, the amount due such employee" and that "[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment." I.C. § 22–2–5–1. Furthermore, "'[e]mployees, upon separation from employment, must be paid the amount [of wages] due them at their next and usual payday.'" *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind.2004) (quoting *Fardy v. Physicians Health Rehab. Servs., Inc.*, 529 N.E.2d 879, 882 (Ind.Ct. App.1988)). Failure to pay subjects the employer to a penalty of up to double the unpaid wages and attorney fees. I.C. § 22–2–5–2.

The Indiana Code defines "wages" for purposes of the Wage Payment Statute as, "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." I.C. § 22–2–9–1(b); *see Highhouse*, 807 N.E.2d at 739 (applying that definition of "wages" to the Wage Payment Statute).

■ The name given to the method of compensation is not controlling. *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind.Ct.App. 2005). Rather, we will consider the substance of the compensation to determine whether it is a wage and, therefore, subject to the Wage Payment Statute. *Id.* We have recognized that wages are "'something akin to the wages paid on a regular periodic basis for regular work done by the employee....'" *Id.* (quoting *Wank v. St. Francis Coll.*, 740 N.E.2d 908, 912 (Ind.Ct.App.2000)). In other words, if compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a "wage." *Id.*

■ Hansen was compensated for his work at KLP in two ways—a regular salary and something that he called "business

development commissions" (BD compensation). Tr. p. 122. When KLP began work on a new case, the firm allotted 10% of the future revenues from that case to BD compensation. As KLP worked on the case, it sent bills to the client for its time. *After* the client paid the bill and KLP received payment, the BD compensation was distributed to the various attorneys entitled to receive it.[5] The timing of the payment of BD compensation was inextricably tied to the client's payment of its bills—indeed, if the client paid only a portion of a bill, BD compensation was distributed solely for the amount that had been paid.[6] The BD compensation was typically distributed on the fifteenth day of the next month after the payment was received.

At trial, Hansen established that he was owed BD compensation in the amount of $27,062.12. KLP now concedes—after over six years of litigating a contrary position—that Hansen is entitled to recover that amount under a breach of contract theory. Appellant's Br. p. 15 n. 5. In fact, according to Hansen, "[a]bout the time the Brief of Appellants was filed, KLP issued Hansen a check for $27,062.12, the BD amount he proved at trial." Appellees' Br. p. 14. KLP argues, however, that the BD compensation payment was not a wage under the Wage Payment Statute; consequently, KLP should not have to pay damages and attorney fees pursuant to that law.

Our Supreme Court considered a similar bonus structure in *Highhouse*. In that case, a former employee physician sued to collect an unpaid bonus calculated on the basis of the employer's collections for services rendered by the former employee, less an allocation of expenses of the employer's operations. In finding that the bonus was not a wage pursuant to the Wage Payment Statute, our Supreme Court observed that

> bonus calculations, as a general rule, often cannot be calculated within such a short period of time [i.e., ten days] after the services are performed. Here, because Highhouse's *bonus was based on collections for his services, not billings,* substantially more than ten days after the services were performed might well be needed before the bonus amounts can be calculated. Even assuming the bonus was not "earned" until the patient's bill is paid, the allocation of expenses for the overall operations often cannot reasonably be expected to be calculated within ten days of that time. Moreover, the contract itself called for payments "annually" ... [and this] provision for annual payments lends support to the view that both parties recognize that frequent calculation and payment was difficult if not impossible. In short, the bonus is not a "wage" within the meaning of the Wage Payment Statute.

807 N.E.2d at 740 (emphasis added).

The appellees argue that we should focus on the court's assumption that the bonus was not earned until the patient's

---

5. *The BD distribution varied by case. As explained by KLP, "[f]or example, the attorney responsible for the client might receive the entire 10% allotment at the initiation of the case then assign portions of that 10% to other attorneys for various reasons, such as to reward the attorney who actually handles the file." Appellant's Br. p. 7.*

6. As explained by KLP,

> if the client was sent a bill totaling $1,000.00, and only paid $500.00, when the money was received an attorney entitled to 5% BD Compensation from that payment would receive twenty[-]five dollars ($500 multiplied by 5%), not fifty dollars (the total amount of the bill, $1,000.00, multiplied by 5%). Only when the client paid the remaining $500 would a BD Compensation payment be made for that $500.

*Id.* at 9.

bill was paid, observing that unlike in *Highhouse*, BD compensation is not tied to any other contingencies such as overall operations. It is apparent, however, that our Supreme Court was merely making that assumption for argument's sake so that it could emphasize the multiple reasons the bonus failed to qualify as a wage. It only takes one reason, however, and here, as in *Highhouse*, the disputed compensation was tied to collection rather than billing. Moreover, here, as in *Highhouse*, payments were made on a schedule—i.e., monthly—indicating that more frequent calculation and payment in compliance with the Wage Payment Statute's ten-day rule would have been difficult, if not impossible. Given the rule announced in *Highhouse*, therefore, we are compelled to conclude that the trial court erroneously awarded damages and attorney fees pursuant to the Wage Payment Statute.

 That being said, as noted above, KLP has conceded that it breached a contract with Hansen and that it owed him $27,062.12 as a result of that breach. Hansen argues that he is entitled to prejudgment interest on those damages. An award of prejudgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable. *Town of New Ross v. Ferretti*, 815 N.E.2d 162, 169 (Ind.Ct.App.2004). More specifically,

> [t]he test for determining whether an award of pre-judgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time. The award is considered proper when the trier of fact does not have to exercise its judgment to assess the amount of damages. Importantly for purposes of our review, an award of pre-judgment interest is gener-

ally not considered a matter of discretion.

*Id.* at 169–70 (internal citations omitted). Here, the damages were complete and ascertainable—Hansen sought the amount of BD compensation he was owed at the time he resigned. The trial court did not have to exercise its judgment to assess the amount of damages. Consequently, prejudgment interest is proper as a matter of law and we remand this matter to the trial court for a calculation of the amount of prejudgment interest to which Hansen is entitled.

### B. Frivolous Litigation and Malicious Prosecution

KLP next argues that the trial court erroneously awarded the appellees attorney fees based on conclusions that KLP's lawsuit was frivolous and its prosecution thereof was malicious.

 Indiana Code section 34–52–1–1(b) gives the trial court discretion to award attorney fees to the prevailing party if the other party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

A claim is frivolous

(a) if it is taken primarily for the purpose of harassing or maliciously injuring a person, or (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law.

*Kahn v. Cundiff,* 533 N.E.2d 164, 170 (Ind. Ct.App.1989), *summarily aff'd by* 543 N.E.2d 627 (Ind.1989). A claim is unreasonable "if, based on a totality of the circumstances, including the law and facts known at the time of the filing, no reasonable attorney would consider that the claim or defense was worthy of litigation or justified." *Id.* at 170–71. And a claim is groundless "if no facts exist which support the legal claim relied on and presented by the losing party." *Id.* at 171.

▇▇▇▇ And as for a malicious prosecution claim,

> [t]he essence of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to legal process. The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.

*Crosson v. Berry,* 829 N.E.2d 184, 189 (Ind.Ct.App.2005) (internal citation omitted), *trans. denied.* A malicious prosecution claim is separate and distinct from a claim for statutory attorney fees pursuant to Indiana Code section 34–52–1–1. *Id.* at 194. "Whereas the statute providing for award of the attorney fees for an action or defense on a claim or defense which is frivolous, unreasonable, or groundless does not require a finding of an improper motive, an action for malicious prosecution requires a finding of malice." *Id.*

▇▇▇ Here, KLP filed an eight-count claim against the appellees and lost on all eight counts on summary judgment. Leading up to that time were a number of actions—or lack thereof—taken and legal arguments—or lack thereof—made by KLP:

- KLP—an experienced law firm—filed the lawsuit in a county that was not a preferred venue.

- After KLP filed the lawsuit, the appellees requested that KLP share the grounds for KLP's claim that Hansen was a partner; KLP offered no substantive response.

- After conducting discovery, KLP unearthed no facts supporting its factual assertions or legal theories.

- KLP defended itself by establishing that Kopka "honestly believed" that Hansen was a KLP partner and that if Hansen left KLP, he should take over the remaining years of KLP's lease and its equipment. The bases for Kopka's "honest belief" were "Kopka's requests, own practices, feelings about what was fair, and concessions from other employees." Appellees' Br. p. 24.

- KLP did not establish that it attempted to verify that factual and legal bases existed for its claims.

- KLP's Employee Handbook stated that Hansen was an at-will employee. At trial, Kopka—one of two equity partners in an experienced law firm that was suing a former employee based, in part, on employment law—testified that "I don't know" what "employment at will" means. Appellees' App. p. 872–73.

- Steve Landau—the other equity partner of KLP, now deceased—told Hansen that KLP filed this lawsuit because it "wanted to dissuade other employees from leaving its employ without assuming its financial obligations." Appellees' Br. p. 26. And apparently the plan worked, inasmuch as another KLP associate testified that he and several other attorneys wanted to resign from KLP but did

not do so until the trial court ruled against KLP on summary judgment because they feared being sued for partnership duties. Appellees' App. p. 692.

KLP's only attempted defense on appeal is to argue that it had a good faith argument that Hansen breached his fiduciary duties by soliciting KLP employees to resign with him. As concluded above, however, this claim is not successful. Moreover, we again emphasize that KLP's only arguments to the trial court focused on Hansen's responsibilities *as a partner*— and there is no evidence supporting a conclusion that Hansen was a KLP partner. KLP does not attempt to support the remaining seven claims it raised against the appellees.[7] Given these facts and the history of the litigation, we cannot conclude that the trial court erred in awarding attorney fees to the appellees after concluding that KLP engaged in frivolous litigation and malicious prosecution.

The trial court concluded that the appellees were entitled to attorney fees pursuant to the Wage Payment Statute *and* pursuant to their claims for frivolous litigation and malicious prosecution. Emphasiz-

ing that the appellees were not entitled to double recovery of their fees, the trial court awarded $38,500 under the Wage Payment Statute and $22,000 under the frivolous litigation and malicious prosecution claims. Appellant's App. p. 20. Although we have already determined herein that the appellees are not entitled to damages—including attorney fees—pursuant to the Wage Payment Statute, the $22,000 fee award for frivolous litigation and malicious prosecution is affirmed.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to calculate the amount of prejudgment interest to which Hansen is entitled pursuant to KLP's breach of contract regarding BD compensation.

BAILEY, J., and VAIDIK, J., concur.

---

7. It does attempt to argue—with *no* citation to evidence whatsoever—that "there is a reasonable inference that Skiles was involved in the wholesale migration of employees from [KLP] to [SHCD]." Appellant's Br. p. 26. Essentially, KLP's argument with respect to Skiles is that "it seems highly unlikely" that Skiles would have played no part in decision-making with regard to the hiring of SHCD employees. *Id.* This argument is insufficient to establish that KLP had a good faith and/or reasonable case to make against Skiles.