In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1482

AMORITA N. THOMAS, on behalf of Herself and
all others similarly situated,

*Plaintiff-Appellant,*

*v.*

H&R BLOCK EASTERN ENTERPRISES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-CV-667—**David F. Hamilton**, *Judge.*

ARGUED OCTOBER 20, 2010—DECIDED JANUARY 12, 2011

Before FLAUM, RIPPLE, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Amorita Thomas ("Thomas")
sued her employer, H&R Block Eastern Enterprises, Inc.
("H&R Block"), under Indiana's Wage Payment Statute,
IND. CODE § 22-2-5-1 *et seq.* (2010), for paying its end-of-
season ("EOS") compensation more than ten days after
it was earned. The district court granted H&R Block's
motion for summary judgment based on a finding that

EOS compensation did not constitute "wages" under Illinois statutory law. At issue is whether H&R Block's EOS compensation is a wage under Indiana law, and thus whether it is subject to the Wage Payment Statute, which requires employers to pay "wages" no more than ten days after they are earned. Both Indiana and federal case law provide guidelines for answering this question. In light of those guidelines, we affirm.

## I. Background

Since neither party argues that the district court considered evidence it should not have or neglected to consider evidence it should have, we recite the facts that the district court provided in its opinion granting summary judgment to H&R Block. *See Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010).

Thomas began working for H&R Block as a seasonal employee in 2004. She worked only during tax season (typically from December through mid-April). In both 2006 and 2007, she entered into a Tax Professional Employment Agreement ("Employment Agreement") with H&R Block and worked as a Tax Professional II, responsible for preparing clients' tax returns and offering other financial products and services H&R Block provides.

Thomas was eligible for two forms of compensation as a Tax Professional II. First, pursuant to her Employment Agreement, she received an hourly wage and was eligible for overtime. She received her hourly wage in a timely manner on a bi-weekly basis during both 2006

and 2007. Second, she was eligible for EOS compensation. H&R Block's Compensation Information Sheet ("Sheet") explained the terms and conditions of the EOS compensation. Thomas was eligible for EOS compensation only if the sum of various specified amounts exceeded the aggregate gross hourly wages paid to her during the tax season (an amount which excluded hourly wages for certain training exercises). The specified amounts included, among other things, a few dollars for each product Thomas sold during the tax season, client retention incentives when a customer whom Thomas served the prior tax year returned to H&R Block, and a fee for each tax return she prepared, where the fee was based on "fees charged to the client *and collected by H&R Block during the Tax Season*." 2006 Compensation Information Sheet Part 1, ¶ 4 (emphasis added); 2007 Compensation Information Sheet Part 1, ¶ 4 (emphasis added). Tax Professionals were to be credited for tax returns paid through April 21, 2006, and April 18, 2007, and all hours worked and wages earned through April 21, 2006, and April 20, 2007. The Sheets provided that EOS compensation would be paid by May 12, 2006, and May 14, 2007, "or as soon thereafter as is reasonable under the circumstances." 2006 Compensation Information Sheet Part 6, ¶ 3; 2007 Compensation Information Sheet Part 5, ¶ 4.

Thomas was eligible for EOS compensation in 2006 and 2007. Thomas could view daily snapshots of her accumulated compensation during the tax season, but the reports did not include all of the data necessary to calculate the amount of her EOS compensation.

Payroll processing for the final pay periods' hourly wages occurred on April 22, 2006, and April 21, 2007, respectively. The payroll processes were completed on April 23, 2006, and April 22, 2007, and the payroll was mailed to ADP, which printed and mailed Thomas's payroll checks, on the same day. Employee checks were available for deposit on April 26, 2006, and April 25, 2007.

Information was entered into H&R Block's Financial Information Network ("FIN") between April 24 and 26, 2006, and April 23 and 25, 2007. Next, on April 26, 2006, and April 25, 2007, bookkeepers and managers began entering EOS compensation information into the FIN. The deadlines for entering all of the compensation information into the payroll system were May 1, 2006, and May 1, 2007. The Employee Compensation Reports were created on the same days. Reconciliation periods began on May 1, 2006, and May 2, 2007, and payroll processing for EOS compensation began on May 4, 2006, and May 4, 2007. ADP mailed compensation checks on May 8, 2006, and May 9, 2007, with issue dates of May 10, 2006, and May 11, 2007. Thomas received her EOS compensation via direct deposit on May 10, 2006, and May 11, 2007.

For the 2006 tax season, H&R Block calculated EOS compensation for roughly 78,000 professionals in the United States and actually paid compensation to roughly 54,000 tax professionals, 1,426 of whom worked in Indiana. For the 2007 tax season, H&R Block calculated EOS compensation for roughly 80,000 tax professionals in the United States and actually paid compensa-

tion to roughly 56,000, 1,437 of whom worked in Indiana. H&R Block calculated and processed EOS compensation payments on an expedited basis, which required significant overtime. JoAnn Atkinson, the director of H&R Block's administrative center, testified that she believed it would be impossible to have calculated and paid EOS compensation within ten days of the close of the tax seasons. Atkinson testified that she did not know how long it would have taken to process payments for Indiana tax professionals if Indiana had been done first.

Indiana's Wage Payment Statute requires employers to pay "wages" within ten days after they are earned. IND. CODE § 22-2-5-1. Pursuant to this the statute, H&R Block timely paid Thomas her hourly wages. The parties agree that Thomas's EOS compensation was calculated correctly and on the schedule that H&R Block promised, and that H&R Block paid Thomas's 2006 and 2007 EOS compensation more than ten days after it was earned. Accordingly, if EOS compensation constitutes wages, Thomas's 2006 and 2007 EOS compensation was late, rendering her eligible for statutorily-provided liquidated damages and attorney fees. *See* IND. CODE § 22-2-5-2.

Thomas sued H&R Block for violating the Wage Payment Statute, alleging that it failed to pay EOS compensation within ten days after it was earned. H&R Block moved for summary judgment on the ground that EOS compensation is not a wage under Indiana's Wage Payment Statute, and thus that it is not subject to

the Ten-Day Rule. Thomas moved for class certification before the motion for summary judgment, but the district court stayed the class certification issue so it could first decide the motion for summary judgment. The district court granted H&R Block's motion. Thomas appeals from that decision.

## II. Analysis

### A. "Wages" Under Indiana Law

We review de novo a district court's decision to grant summary judgment, "construing all facts and inferences in the light most favorable to the party opposing the motion. We will affirm if the summary judgment record shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005) (citing FED. R. CIV. P. 56(c)).

When addressing a question of state law while sitting in diversity, "our task is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Woidtke v. St. Claire Cnty., Ill.*, 335 F.3d 558, 562 (7th Cir. 2003) (internal quotation marks and citation omitted). If the state's highest court has yet to rule on an issue, "decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Research Sys. Corp. v. ISPOS Publicite*, 276 F.3d 914, 925 (7th Cir. 2002).

Indiana's Wage Payment Statute, IND. CODE. § 22-2-5-1 *et seq.*, requires employers to pay their employees' "wages" within ten days of the date they are earned, and allows employees to recover damages and attorney fees from employers who pay late. *See* IND. CODE. §§ 22-2-5-1, -2; *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1063 (Ind. 2007). Because the Wage Payment Statute does not define "wages," Indiana courts look to the closely-related Wage Claims Statute, which defines wages as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." IND. CODE § 22-2-9-1(b); *see Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004).

As a preliminary matter, "[t]he name given to the method of compensation is not controlling. Rather, we will consider the substance of the compensation to determine whether it is a wage and, therefore, subject to the Wage Payment Statute." *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1072 (Ind. Ct. App. 2007).

The Indiana Supreme Court explained that a particular form of compensation is a wage under the Indiana Wage Payment Statute if "it is compensation for time worked and is not linked to a contingency such as the financial success of the company." *Highhouse*, 807 N.E.2d at 740 (internal quotation marks and citations omitted); *see also id.* at 739 (accepting the lower court's test of wages, which provided that "a bonus is a wage if the

bonus directly relates to the time that an employee works, is paid with regularity, and is not dictated by the employer's financial success"). Applying this standard, Indiana courts consider a variety of factors to guide their determination of whether compensation similar to EOS compensation constitutes a wage.

First, Indiana courts are more likely to find compensation a wage if it is "not linked to a contingency." *Naugle*, 864 N.E.2d at 1067 (quoting *Highhouse*, 807 N.E.2d at 740); *see also Harney v. Speedway SuperAmerica*, 526 F.3d 1099, 1105 (7th Cir. 2008) (same). For example, compensation based on the performance of a company is less likely be deemed a wage. *See, e.g.*, *Highhouse*, 807 N.E.2d at 740. Similarly, compensation is less likely to be a wage if it is contingent on a company's collection efforts. *See Hansen*, 874 N.E.2d at 1074 ("It only takes one reason, however, and here, as in *Highhouse,* the disputed compensation was tied to collection rather than billing."); *see also Highhouse*, 807 N.E.2d at 740 ("[B]ecause Highhouse's bonus was based on collections for his services, not billings, substantially more than ten days after the services were performed might well be needed before the bonus amounts can be calculated."). The Indiana Supreme Court explained that payment contingent on factors outside of an employee's or employer's control "is not consistent with the time constraints imposed by the Wage Payment Statute." *Highhouse*, 807 N.E.2d at 740; *see also Harney*, 526 F.3d at 1106. Relatedly, the Indiana Supreme Court explained that compensation is less likely to constitute a wage when it is difficult to calculate and pay within ten days after it was earned. *See*

*Highhouse*, 807 N.E.2d at 740; *see also Harney*, 526 F.3d at 1106. Thus, although parties cannot contract out of the Ten-Day Rule, Indiana courts consider whether the compensation agreement calls for payment more than ten days after it was earned when determining whether compensation is difficult to calculate and pay within the ten-day period. *See, e.g.*, *Highhouse*, 807 N.E.2d at 740 ("An employer may not escape the Act by obtaining the employee's agreement that wages are not payable within the statutorily prescribed times. But the provision for annual payments lends support to the view that both parties recognize that frequent calculation and payment was difficult if not impossible."); *Hansen*, 874 N.E.2d at 1074 ("[H]ere, as in *Highhouse,* payments were made on a schedule—i.e., monthly—indicating that more frequent calculation and payment in compliance with the Wage Payment Statute's ten-day rule would have been difficult, if not impossible.").

Second, related to the first factor, Indiana courts also consider whether the compensation "directly relates to the time that an employee works." *Highhouse*, 807 N.E.2d at 739; *see also Naugle*, 864 N.E.2d at 1067 ("[A] bonus is a wage if it is compensation for time worked and is not linked to a contingency such as the financial success of the company." (quoting *Highhouse*, 807 N.E.2d at 740)); *McCausland v. Walter USA, Inc.*, 918 N.E.2d 420, 426 (Ind. Ct. App. 2009); *Hansen*, 874 N.E.2d at 1072 ("[I]f compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a 'wage.'").

Third, Indiana courts consider whether wages are paid on "a regular periodic basis for regular work done by the employee." *Hansen*, 874 N.E.2d at 1072 (quoting *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind. Ct. App. 2005)); *see also Highhouse*, 807 N.E.2d at 739. Thus, when a particular form of compensation is paid annually, it is less likely to be considered a wage. *See, e.g.*, *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1114 (S.D. Ind. 2001).

Fourth, Indiana courts consider whether the compensation in question is paid in addition to wages. In *Gress*, for example, an employee was paid on both a salary and commission. 826 N.E.2d at 2. He was eligible to receive commission payments on a monthly basis; these payments represented advances on his commissions that he was required to return if his projects were less profitable than anticipated. *Id.* The court held that the commission payments were not "wages," even though they were paid monthly, because the commission program was based on the profitability of each salesperson's individual projects, and thus "[t]he payment of commissions was not directly linked to the amount of work performed," and because of "the length of time involved in determining the final commission," which made it "impossible . . . to know what Gress was owed within ten days." *Id.* at 4.

In *Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628 (Ind. Ct. App. 2008), the Court of Appeals of Indiana expressly indicated that whether commissions are paid in addition to salary is relevant to determining whether commissions are "wages." In *Nichols*, the court

noted that Indiana courts generally treat commissions as wages. 885 N.E.2d at 664. It held that commissions were "wages" where, other than car allowance and continued monthly payments of an annuity, the employee's compensation was composed solely of commissions, was paid on a regular, monthly basis, and could be calculated immediately. *Id.* at 663-65. It issued its holding in spite of the fact that the commissions were contingent on the employer's financial success. *Id*. at 663-64. But it explained that the commission "was not an amount in addition to her normal compensation; *[the commission] was her normal compensation.*" *Id.* at 664 (emphasis added). In distinguishing *Gress*, the court in *Nichols* explained that "Nichols's compensation could be determined immediately," and that "the employee in *Gress* received a base salary plus commission, while Nichols received only a commission." *Id.* at 664. *Gress* and *Nichols* indicate that Indiana courts consider, at least to some extent, whether a particular type of compensation is an employee's sole form of compensation, or whether it is paid in addition to a more regularly-paid salary.

Guided by these factors, we conclude that the EOS compensation is not a wage under the Wage Payment Statute. First, Thomas's EOS compensation was "dependent on other factors than [her] efforts," since a portion of the EOS compensation was based on the contingency of collecting from customers. *Naugle*, 864 N.E.2d at 1067; *see also Highhouse*, 807 N.E.2d at 740; *Hansen*, 874 N.E.2d at 1074. Not to mention, Atkinson's testimony indicates that it was at least difficult, if not impossible, to calculate

EOS compensation within the ten-day period, *see Highhouse*, 807 N.E.2d at 740; *Hansen*, 874 N.E.2d at 1074, and the Sheet, providing that H&R Block would pay EOS compensation on a date after the expiration of the ten-day period, "or as soon thereafter as is reasonable under the circumstances," demonstrates the parties' understanding and expectation that the calculation and payment of the EOS compensation would likely take more than ten days, *see Highhouse*, 807 N.E.2d at 740; *Harney*, 526 F.3d at 1106. Second, Thomas's EOS compensation was not directly related to the time she worked. Since EOS compensation was partially based on collections, Thomas theoretically could have worked for an entire tax season without earning any EOS compensation. *See Gress*, 826 N.E.2d at 4. Third, H&R Block paid EOS compensation annually, at the end of every tax season, and not on a regular, periodic basis. *See, e.g.*, *Manzon*, 138 F. Supp. 2d at 1114. Finally, as explained in more detail below, H&R Block paid Thomas an hourly wage in addition to EOS compensation.

Thomas's arguments on appeal are unavailing. First, she argues that EOS compensation is a wage because it is composed entirely of commissions, and because Indiana Code § 22-2-9-1(b) unambiguously includes "commission" in the definition of wages. To establish that EOS compensation represents commissions, she argues that testimony from H&R Block's employee referring to EOS compensation as a commission permits the inference, which we must accept on a motion for summary judgment, that the EOS compensation is a commission, and thus a wage. The fact that H&R Block

chose to pay commission at the conclusion of the tax season, she argues, does not transform it from a series of wage payments into a bonus. As general matter, however, the substance of the compensation, and not its label, guides our analysis. *Hansen*, 874 N.E.2d at 1072. Further, Thomas's argument begs the question and ignores case law in both state and federal courts indicating that commissions do not always constitute "wages." *See, e.g. McCausland*, 918 N.E.2d at 424-46; *Gress*, 826 NE.2d at 4. We are in no position to apply the statutes without looking to case law interpreting them. *See Woidtke*, 335 F.3d at 562 ("[O]ur task is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." (internal quotation marks and citations omitted)). In light of the authorities discussed above, Thomas's argument fails.

Consistent with her argument that her compensation was exclusively composed of commissions, Thomas advances the position that her salary was merely a draw on her commission. She, thus, argues that she did not receive a wage in addition to her EOS compensation. She relies on testimony from an H&R Block employee characterizing the hourly wage as a draw. Since EOS compensation is paid only to the extent that various specified amounts exceed hourly wages, it is possible for Thomas to argue that her salary was *in part* a draw on her commission. But she cannot suggest that her wages were completely drawn from her commissions: She could have earned no commission and still received

the same hourly wage without having to repay H&R Block. Further, only a portion of Thomas's hourly wages factored into calculating her EOS compensation. EOS compensation is, at least in part, a form of compensation that H&R Block paid in addition to hourly wages.

Finally, Thomas argues that collecting on sales should not be considered a contingency for the purpose of determining whether compensation is a wage, and that Indiana case law to the contrary is incorrect. She first points to case law indicating that commissions are wages. *See, e.g.*, *J Squared, Inc. v. Herndon*, 822 N.E.2d 633 (Ind. Ct. App. 2005). She next argues that *Hansen* misinterprets *Highhouse* when it cites to *Highhouse* as support for its holding that collection efforts can constitute a contingency for the purpose of determining whether a compensation is a wage. 874 N.E.2d at 1074. She further argues that collection efforts cannot constitute such a contingency because "commission" is in the statutory definition of wages, IND. CODE ANN. § 22-2-9-1(b), and there can be no commission until collection is made. But *Highhouse* indicates that a company's performance is merely one example of a contingency, 807 N.E.2d at 740 ("A 'bonus' is a wage if it is compensation for time worked and is not linked to a contingency *such as* the financial success of the company." (emphasis added) (internal quotation marks and citations omitted)), and it expressly references the fact that "Highhouse's bonus was based on collections for his services, not billings" in concluding that Highhouse's bonus was not a wage. *Id.* at 740. The Indiana Supreme Court has not limited the relevant contingencies to busi-

ness performance, and imposing such a limit would be contrary to Indiana case law.

## B. Certification

Thomas asks us to certify to the Indiana Supreme Court the question of whether the EOS compensation is a wage under Indiana law. When determining whether to certify a question, "[t]he most important consideration guiding the exercise of this discretion . . . is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir. 2001) (citations omitted). We have also explained that "certification is appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *Id.* at 672 (citations omitted); *see also* 7th Cir. R. 52(a); Ind. R. App. P. 64 (providing that federal courts may certify a question of law to the Indiana Supreme Court when it appears that the case "presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent"). We consider a variety of additional factors when determining whether to certify a question, *see Pate*, 275 F.3d at 671-72, but "[q]uestions that are tied to the specific facts of a case are typically not ideal candidates for certification. Thus, if certification would

produce a fact bound, particularized decision lacking broad precedential significance, certification is inappropriate." *Harney* 526 F.3d at 1101.

This case does not warrant certification. First, it involves the interpretation of a compensation program that appears unique to H&R Block. Resolution of this case would unlikely "have a far-reaching precedential effect for others." *Id.* Second, the Indiana Supreme Court has provided guidance on this issue that assists us in resolving this dispute, most recently in *Highhouse*. We decline to certify such a fact-specific question, especially in light of Indiana case law addressing issues similar to the issue this case presents.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court.